**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEVIN G. NUNES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:21-cv-608** |
| | § | |
| **NBCUNIVERSAL MEDIA, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT NBCUNIVERSAL MEDIA, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3) AND 28 U.S.C. § 1406(a) OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a) OR § 1406(a)**

---

HAYNES AND BOONE, LLP
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
600 Congress Ave., Ste. 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

*Attorney for Defendant*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ ii

I.  INTRODUCTION ............................................................................................... 1

II. FACTUAL BACKGROUND .................................................................................. 2

    A.    The Parties. .................................................................................................. 2

    B.    Maddow reports on findings from the Office of the Director of National Intelligence that Russian agents provided disinformation to U.S. officials during the 2020 election ................................................................................. 3

    C.    Nunes refuses to respond to NBCU's attempts to clarify his statements and files suit. ....................................................................................................... 4

    D.    The Report, parties, and potential witnesses have no connections to Texas. .......... 5

III. COMPLAINED OF STATEMENTS ....................................................................... 5

IV. STATEMENT OF ISSUES UNDER LOCAL RULE CV-7(A)(1) ................................. 6

V. LEGAL STANDARD ........................................................................................... 7

    A.    Basis for Dismissal: Lack of Personal Jurisdiction under Rule 12(b)(2) ................. 7

    B.    Basis for Dismissal: Improper Venue under Rule 12(b)(3) or 28 U.S.C. § 1406(a). ....................................................................................................... 8

    C.    Basis for Transfer: Transfer Venue under 28 U.S.C. § 1404(a) or § 1406(a). ....................................................................................................... 8

VI. ARGUMENT ..................................................................................................... 9

    A.    This case should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction ...................................................................................... 9

    B.    This case should be dismissed under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) because a substantial part of the events giving rise to the claim did not occur in the Eastern District of Texas and NBCU has insufficient contacts with the Eastern District of Texas. ..................................... 15

        1.    Venue is improper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b)(1) and (3) because NBCU is not subject to personal jurisdiction in this district. ..................................................... 15

        2.    Venue is improper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim did not occur in this district. ..................................... 16

    C.    In the alternative, this case should be transferred to the Eastern District of California under 28 U.S.C. § 1404(a) or § 1406(a) because it could have been brought there and it is a more convenient venue for the parties and witnesses. ................................................................................................... 17

NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

ii

1.      This case could have been filed in the Eastern District of California because California is the focal point of the Report and the alleged harm suffered and a substantial part of the events giving rise to the claim occurred there.................................................................................20

2.      The public and private factors support transferring the case to the Eastern District of California. ..................................................22

    a.    The private factors support transferring the case to the Eastern District of California. .........................................22

        i.    The "relative ease of access to sources of proof" factor favors transfer because pertinent documents are likely to be found in the Eastern District of California, while none will be found in this district. .........22

        ii.    The "availability of compulsory process to secure the attendance of witnesses" factor favors transfers because more third-party witnesses reside in the Eastern District of California than this district. .................23

        iii.    The "cost of attendance for willing witnesses" factor favors transfer because witnesses live in California, while no witnesses live in Texas. ....................24

        iv.    The factor considering whether there are "practical problems that make trial of a case easy, expeditious and inexpensive" is neutral because none exist. ...............25

    b.    The public factors support transferring the case to the Eastern District of California. .........................................26

        i.    The "administrative difficulties flowing from court congestion" factor is neutral because of its limited utility..........................................................................26

        ii.    The "local interest in having localized interests decided at home" factor favors transfer because the Eastern District of California has an interest in this case involving one of its citizens. ......................................27

        iii.    The "familiarity of the forum with the law that will govern the case" factor favors transfer because the Eastern District of California will have more familiarity with California law, which will apply in this defamation case. .........................................................28

        iv.    The "avoidance of unnecessary problems of conflict of laws or in the application of foreign law" factor is neutral because no such problems exist. .........................29

VII. CONCLUSION ...............................................................................29

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

iii

CERTIFICATE OF SERVICE ......................................................................................................30

**N**BCU'**S** **M**OTION TO **D**ISMISS FOR **L**ACK OF **P**ERSONAL **J**URISDICTION AND **I**MPROPER **V**ENUE OR, IN THE
**ALTERNATIVE, M**OTION TO **T**RANSFER **V**ENUE

iv

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Beneplace, Inc. v. DaVita, Inc.*,
   No. 1:21-CV-00070-RP, 2021 WL 2905417 (W.D. Tex. July 9, 2021)...................................9

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017)...........................................................................................................10

*Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*,
   923 F. Supp. 950 (S.D. Tex. 1996) .....................................................................................16

*Bride Ministries, NFP v. DeMaster*,
   4:20-CV-00402, 2020 WL 6822836 (E.D. Tex. Nov. 20, 2020, J. Mazzant)........................29

*Busch v. Viacom Intern., Inc.*,
   477 F. Supp. 2d 764 (N.D. Tex. 2007) ..................................................................................9

*Butowsky v. Gottlieb*,
   No. 4:19-CV-180, 2020 WL 5757223 (E.D. Tex. Sept. 28, 2020, J. Mazzant) ...............13, 14

*Cap. Credit Inc. v. Mainspring Am., Inc.*,
   No. A-19-CV-797-LY, 2020 WL 4043499 (W.D. Tex. July 17, 2020) ................................11

*Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*,
   6:07-CV-1626ORL19KRS, 2008 WL 4058014 (M.D. Fla. Aug. 27, 2008) ..........................17

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) .........................................................................................12, 20

*Coleman v. Brozen*,
   4:19-CV-705, 2020 WL 2200220 (E.D. Tex. May 6, 2020, J. Mazzant) ..............................26

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
   No. 4:15-CV-548-ALM, 2016 WL 4095547 (E.D. Tex. Aug. 2, 2016, J.
   Mazzant) ...............................................................................................................................26

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).........................................................................................................9, 11

*Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*,
   376 F.3d 399 (5th Cir. 2004) .........................................................................................10, 12

*Falls v. Katmai Support Services, LLC*,
   No. 3:14CV315, 2014 WL 6900916 (E.D. Va. Dec. 5, 2014)................................................1

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE
ALTERNATIVE, MOTION TO TRANSFER VENUE**

v

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ........................................................................7, 13

*Francis v. Api Tech. Services, LLC*,
  No. 4:13-CV-627, 2014 WL 11462447 (E.D. Tex. Apr. 29, 2014, J. Mazzant) ..............12, 13

*Frank v. P N K (Lake Charles) L.L.C.*,
  947 F.3d 331 (5th Cir. 2020) .............................................................................10

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).....................................................................25, 26

*Halliburton Energy Services, Inc. v Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ...........................................................................7, 8

*Hawbecker v. Hall*,
  88 F. Supp. 3d 723 (W.D. Tex. 2015).......................................................13, 16, 21

*Hem v. Toyota Motor Corp.*,
  2:07-CV-079-CE, 2009 WL 2591374 (E.D. Tex. Aug. 20, 2009) .........................................27

*Herman v. Cataphora, Inc.*,
  730 F.3d 460 (5th Cir. 2013) ...............................................................................12

*Interactive Music Tech., LLC v. Roland Corp. U.S.*,
  No. 6:07-CV-282, 2008 WL 245142 (E.D. Tex. Jan. 29, 2008) ...........................................28

*Jerger v. D&M Leasing Dallas*,
  No. 4:20-CV-00309, 2020 WL 4335733 (E.D. Tex. July 28, 2020) ........................................8

*Johns Hopkins Univ. v. Nath*,
  238 S.W.3d 492 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ................................14

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 700 (1984)..........................................................................................14

*Klutho v. 21ST Century Ins. Co.*,
  No. 07C4111, 2007 WL 4224296 (N.D. Ill. Nov. 26, 2007)...................................................22

*Lahman v. Nationwide Provider Sols.*,
  No. 4:17-CV-00305, 2018 WL 3035916 (E.D. Tex. June 19, 2018, J.
  Mazzant) ........................................................................................................7

*Levine v. CMP Publications, Inc.*,
  738 F.2d 660 (5th Cir. 1984) ...............................................................................28

**N**BCU'**S** **M**OTION TO **D**ISMISS FOR **L**ACK OF **P**ERSONAL **J**URISDICTION AND **I**MPROPER **V**ENUE OR, IN THE
**ALTERNATIVE**, **M**OTION TO **T**RANSFER **V**ENUE

vi

*McVea v. Crisp*,
SA-07-CA-353-XR, 2007 WL 4205648 (W.D. Tex. Nov. 5, 2007), *aff'd*, 291
Fed. Appx. 601 (5th Cir. 2008) .............................................................................21

*Miller v. Kevin Gros Marine, Inc*.,
No. G-05-531, 2006 WL 1061919 (S.D. Tex. Apr. 20, 2006)..........................................19, 22

*Monkton Ins. Services, Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .............................................................................10

*Monster Cable Products, Inc. v. Trippe Mfg. Co*.,
No. 9:07-CV-286, 2008 WL 2492060 (E.D. Tex. June 18, 2008) .........................................28

*Nat'l Ass'n of Home Builders v. U.S. E.P.A*.,
675 F. Supp. 2d 173 (D.D.C. 2009) .......................................................................27

*Nunes v. Cable News Network, Inc*.,
No. 20 CV 03976-LTS-OTW, 2021 WL 665003 (S.D.N.Y. Feb. 19, 2021) .........................28

*Oxysure Sys., Inc. v. Castaldo*,
No. 4:15-CV-324, 2016 WL 1031172 (E.D. Tex. Mar. 15, 2016, J. Mazzant)......................27

*Perkins v. Benguet Consolidated Mining Company*,
342 U.S. 437 (1952).........................................................................................9

*Phillips v. Uber Techs., Inc*.,
No. 3:15-CV-544-JAG, 2016 WL 165024 (E.D. Va. Jan. 13, 2016) .......................................1

*Potts v. Cameron Offshore Boats, Inc*.,
401 F. Supp. 2d 733 (S.D. Tex. 2005) ....................................................................19

*Quest NetTech Corp. v. Apple, Inc*.,
No. 2:19-cv-118, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)........................................19

*In re Radmax, Ltd*.,
720 F.3d 285 (5th Cir. 2013) .............................................................................25

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ...................................................................... *passim*

*Royal Ins. Co. of Am. v. United States*,
998 F. Supp. 351 (S.D.N.Y. 1998) .......................................................................19

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) .............................................................................28

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

vii

*Sarver v. Hurt Locker, LLC*,
    No. 2:10-CV-01076 DMC MF, 2010 WL 4810813 (D.N.J. Nov. 18, 2010) ........................18

*Scoggins v. Dubrow*,
    No. H-20-3487, 2021 WL 4228609 (S.D. Tex. May 28, 2021).................................................9

*Seaman v. IAC/InterActiveCorp, Inc.*,
    3:18-CV-401, 2019 WL 1474392 (E.D. Va. Apr. 3, 2019) (attached as Exhibit
    F) ........................................................................................................................................1

*Seidel v. Kirby*,
    296 F. Supp. 3d 745 (D. Md. 2017) ...............................................................................17, 21

*Soverain Software LLC v. Oracle Corp.*,
    6:12-CV-141, 2014 WL 12621273 (E.D. Tex. Mar. 27, 2014) ...................................24, 25, 26

*Tansey v. City of Keller, Tex.*,
    No. 3:11-CV-03289-N BF, 2012 WL 2092935 (N.D. Tex. May 21, 2012) ...........................27

*True Chem. Sols., LLC v. Performance Chem. Co.*,
    7-18-CV-00078-ADA, 2021 WL 860009 (W.D. Tex. Mar. 8, 2021).....................................22

*TV Azteca v. Ruiz*,
    490 S.W.3d 29 (Tex. 2016)................................................................................................14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..........................................................................................................28

*Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*,
    No. CV H-18-2142, 2019 WL 3713724 (S.D. Tex. Jan. 25, 2019).................................10, 11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...........................................................................8, 18, 20, 27

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ........................................................................ *passim*

*Walden v. Fiore*,
    571 U.S. 277 (2014).........................................................................................................13

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ...........................................................................................23

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017).................................23

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE
ALTERNATIVE, MOTION TO TRANSFER VENUE**

viii

*Matter of Yagman*,
  796 F.2d 1165 (9th Cir. 1986) ................................................................29

*Zoch v. Daimler, AG*,
  No. 6:16-CV-00057-RWS, 2017 WL 2903264 (E.D. Tex. May 16, 2017)...........................11

**Statutes**

28 U.S.C. § 1332.................................................................................20

28 U.S.C. § 1391........................................................................... *passim*

28 U.S.C. § 1404........................................................................... *passim*

28 U.S.C. § 1406........................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ...................................................................6, 7, 9

Fed. R. Civ. P. 12(b)(3) ...................................................................6, 8, 15

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

ix

Defendant NBCUniversal Media, LLC ("NBCU") files this Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 28 U.S.C. § 1406(a) or in the alternative, Motion to Transfer Venue to the U.S. District Court for the Eastern District of California under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

## I.
## INTRODUCTION

This case concerns a California citizen's claim for defamation against a California and New York based media and entertainment company for statements made on a national cable television network and the internet about the official acts of the U.S. Representative for California's 22nd Congressional District, Representative Devin Nunes. But instead of filing suit in his home state where the brunt of any alleged harm to his reputation as a Congressional representative would have been felt, Nunes filed the Complaint in a court more than 1,500 miles from his constituents and California-based office in a district that bears no connections to the parties, witnesses, facts, claims, or defenses in this case.[1] This case should be dismissed for lack of personal jurisdiction and improper venue or, in the alternative, transferred to the Eastern District of California where a substantial part of the events giving rise to the claim occurred, where Nunes resides and NBCU has headquarters, where there are many connections to this case, and where it is more convenient for all parties. Besides being Nunes' home and where his constituents reside—thus the locale for

---

[1] This is not an isolated occurrence. Nunes' counsel Steven S. Biss has a history of filing cases in districts where "the events at issue had few, if any, ties" to the forum state. *See Seaman v. IAC/InterActiveCorp, Inc*., 3:18-CV-401, 2019 WL 1474392, at *7 n. 8 (E.D. Va. Apr. 3, 2019) (transferring case to the Southern District of New York) (attached as Exhibit F); *Phillips v. Uber Techs., Inc*., No. 3:15-CV-544-JAG, 2016 WL 165024, at *3 (E.D. Va. Jan. 13, 2016) (same); *Falls v. Katmai Support Services, LLC*, No. 3:14CV315, 2014 WL 6900916, at *3 (E.D. Va. Dec. 5, 2014) (transferring case to the District of Alaska).

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

any perceived injury due to the alleged defamation—NBCU has headquarters there, and it is closer to evidence and witnesses. California also has an interest in adjudicating this case involving one of its citizens and where its laws will apply. Forcing the parties to litigate in the Eastern District of Texas where no parties or witnesses reside would cause unnecessary hardship and not serve the interests of justice. Because there was no basis for filing suit in this district to begin with, the case should be dismissed or, in the alternative, transferred to the Eastern District of California.

## II.
## FACTUAL BACKGROUND

### A.      The Parties.

Plaintiff Devin Nunes is a citizen of California.[2] Compl. ¶ 7. He is a U.S. Congressman representing California's 22nd Congressional District, which is in the San Joaquin Valley and consists of Fresno and Tulare counties. *Id*. ¶ 1. As Ranking Member of the House Permanent Select Committee on Intelligence ("House Intelligence Committee"), he participates in oversight of U.S. national security, including the intelligence-related activities of agencies, departments, and other aspects of U.S. government in Washington, D.C. *Id*. ¶¶ 1, 7. His duties as a Congressman are to act in the interest of his California constituents, who he has been elected to serve since 2003. *Id*. ¶ 7.

NBCU is a limited liability company organized under the laws of Delaware and has corporate headquarters in New York, New York and Universal City, California. *See* Affidavit of Gabriela Kornzweig ("Kornzweig Aff."), attached as Exhibit A. NBCU maintains offices in

---

[2] According to his biography, Nunes and his family have spent their entire lives in California. Nunes was born in Tulare, California and worked on his family's farm that has operated in Tulare County for three generations. *See Meet Devin*, Devin Nunes Serving California's 22nd District, https://nunes.house.gov/about/default.aspx (last visited October 7, 2021.)

California and conducts business there. *Id*. NBCU regularly employs thousands of people in California. *Id*. NBCU owns and operates MSNBC, a cable news television network headquartered in New York. Compl. ¶ 8. Rachel Maddow hosts *The Rachel Maddow Show*, which airs weeknights on MSNBC. *Id*. *The Rachel Maddow Show* reaches millions of households worldwide through its television programs, website, and social media. *Id*. *The Rachel Maddow Show* is produced in New York. *See* Affidavit of Cory Gnazzo ("Gnazzo Aff."), attached as Exhibit B. While Nunes has named NBCU as the defendant here, MSNBC exercises full editorial discretion and control over its coverage vis-à-vis its corporate parent NBCU.

**B.**    **Maddow reports on findings from the Office of the Director of National Intelligence that Russian agents provided disinformation to U.S. officials during the 2020 election.**

On March 16, 2021, the Office of the Director of National Intelligence released a document about Russia's interference in the 2020 presidential election ("Document").[3] Two days later, Maddow discussed the government's findings in a segment on *The Rachel Maddow Show* ("Report").[4] Maddow said that the Document, which was simultaneously displayed to viewers, found that Ukrainian legislator Andriy Derkach, who was under the control of Russian President Vladimir Putin, provided Russian intelligence disinformation to U.S. officials. She then explained, with a CNN article[5] being shown to viewers, that Democrats on the House Intelligence Committee learned that Derkach had "mailed a stack of unknown materials" to Nunes. Maddow added: "Congressman Nunes accepted a package from him. What was in it?" At this time, a quote from

---

[3] *Foreign Threats to the 2020 U.S. Federal Elections*, NATIONAL INTELLIGENCE COUNCIL, March 10, 2021, https://www.dni.gov/files/ODNI/documents/assessments/ICA-declass-16MAR21.pdf.
[4] The Report can be viewed here. A transcript is attached as Exhibit C.
[5] Manu Raju & Caroline Kelly, *Devin Nunes declines to say whether he received foreign information meant to damage Biden*, CNN, July 31, 2020, https://www.cnn.com/2020/07/30/politics/nunes-declines-answer-foreign-information-damage-biden/index.html.

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

the CNN article appeared on the screen: "Nunes…declined to say at the closed-door meeting this week whether he had received foreign information."[6] Maddow then said that Congressman Nunes has refused to answer questions about what he received from Derkach, referring to his responses at a House Intelligence Hearing in Washington, D.C.[7] She also said he has refused to show the contents of the package to other members of the intelligence community and has refused to hand it over to the FBI. She concluded by questioning why Nunes has remained as the top Republican on the House Intelligence Committee. MSNBC published the Report on television, its website, and social media. Compl. ¶¶ 4–5.

### C.      Nunes refuses to respond to NBCU's attempts to clarify his statements and files suit.

On April 5, 2021, Attorney Steven S. Biss, on behalf of Nunes, sent a letter to NBCU alleging that statements MSNBC made in the Report were false because Nunes "did not refuse to show the package to members of the intelligence community" and "did not refuse to hand it over to the FBI." *See* Exhibit D. NBCU (on behalf of itself and MSNBC) responded to the letter by writing that it was not aware of any statements by Nunes stating that he provided the package to the FBI and that neither Nunes nor "anyone speaking on his behalf made such a statement until [Biss's] letter now." NBCU asked Nunes to clarify his assertions:

---

[6] At the time, other news outlets reported that Nunes received "a series of packets" by mail as part of a foreign disinformation plot. *See, e.g.*, Natasha Bertrand, Andrew Desiderio, & Kyle Cheney, *Democrats: Packets sent to Trump allies are part of foreign plot to damage Biden*, POLITICO, July 23, 2020, https://www.politico.com/news/2020/07/23/democrats-letters-to-trump-allies-are-foreign-plot-to-damage-biden-380217. Politico reported that the packets were sent to Nunes, that he "declined repeated requests for comment" on whether he received the information, and that "the information was not turned over to the FBI."

[7] At the hearing, U.S. Representative Sean Maloney said: "Mr. Chairman, there have been public reports that the minority has received materials from Andrii Derkach, and those materials would not be classified and they would not be prohibited from disclosure . . . And so my question, Mr. Chairman, is of the ranking member, whether he is prepared to disclose to the committee whether he has received materials that have been called into question in the public reports from Andrii Derkach and, if so, whether he is prepared to share them with the rest of the committee." Nunes responded, "No." *See* U.S. House of Representatives, Permanent Select Committee on Intelligence Hearing, July 29, 2022, https://docs.house.gov/meetings/IG/IG00/20200729/109721/HMKP-116-IG00-Transcript-20200729.pdf.

NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

4

Is it Congressman Nunes's position that he submitted the package to the FBI or another intelligence agency? If so, to which agency did Congressman Nunes submit the package and on what date? Was it in response to a request of the agency? We would like to update our reporting on this matter as expeditiously as possible in light of Congressman Nunes's responses and the information in your letter, which we seek to clarify. Please provide your reply to the Executive Producer of TRMS, Cory Gnazzo, [email address redacted].

*See* Exhibit E. Biss never replied to these inquires. Instead, on August 3, 2021, Nunes filed a Complaint in the Eastern District of Texas, alleging that the Report defamed him "in his employment as a U.S. Congressman and as Ranking Member of the House Intelligence Committee." Compl. ¶ 3.

**D.**     **The Report, parties, and potential witnesses have no connections to Texas.**

The Complaint does not allege that the Report had any connection to Texas or that any party or potential witness lives in Texas. Instead, it makes only conclusory allegations about jurisdiction and venue, alleging both that "MSNBC is at home in Texas and is subject to general personal jurisdiction in Texas," and that venue is proper because "[t]he Statements were intentionally broadcast and republished throughout Texas," including in this district. *Id*. ¶¶ 10, 11.

However, neither the Report, MSNBC, nor NBCU (or Nunes for that matter) have sufficient connections to Texas to justify litigating this case there. No contacts were made with Texas in preparing the Report, which was prepared in New York. *See* Gnazzo Aff. The Report had no ties to Texas. The reporting occurred in New York, not Texas, and no sources or documents relied on were in Texas. *Id*. MSNBC's programs are aired nationally with no specific targeting of Texas, and NBCU is headquartered in California and New York—not Texas. *See* Kornzweig Aff.

**III.**
**COMPLAINED OF STATEMENTS**

Nunes alleges that three statements from the Report are defamatory:

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

5

1. "Andriy Derkach is sanctioned by the U.S. government as a Russian agent. He is singled out by name by the Director of National Intelligence as someone under Vladimir Putin's direct purview who helped run this organization targeting our election last year. Congressman Nunes accepted a package from him. What was in it?"

2. "Congressman Nunes has refused to answer questions about what he received from Andriy Derkach. He has refused to show the contents of the package to other members of the intelligence community. He has refused to hand it over to the FBI which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent."

3. "Still, the Republicans have kept Mr. Nunes on as the top Republican on the intelligence committee. How does that stand? How does that stay a thing?"

## IV.
## STATEMENT OF ISSUES UNDER LOCAL RULE CV-7(A)(1)

1. Whether jurisdiction is proper in the Eastern District of Texas. Plaintiff filed this Complaint in the Eastern District of Texas, even though NBCU is not incorporated or headquartered in Texas, the Report does not target the Eastern District of Texas, and the "brunt" of the alleged harm is not suffered there. NBCU asks that this case be dismissed for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2).

2. Whether venue is proper in the Eastern District of Texas. Plaintiff filed this Complaint in the Eastern District of Texas, where no parties or witnesses reside and where there are no connections to the events giving rise to the claim or the alleged injury. NBCU contends that the Complaint should be dismissed for improper venue or, in the alternative, transferred to the Eastern District of California. *See* FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a).

3. Whether, in the alternative, venue should be transferred to the Eastern District of California for the convenience of parties and witnesses and the interest of justice. If the case is not dismissed, NBCU requests that it be transferred to the Eastern District of California, where Nunes

NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

6

is a citizen, NBCU is headquartered, witnesses are nearby, where there's a factual connection to the case, and where the case could have been brought. *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 1406(a).

**V.**
**LEGAL STANDARD**

**A.**     **Basis for Dismissal: Lack of Personal Jurisdiction under Rule 12(b)(2)**

When a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction is proper. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). Allegations in a plaintiff's complaint are taken as true unless they are "contradicted by defendant's affidavits" or are conclusory. *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 WL 3035916, at * 11 (E.D. Tex. June 19, 2018, J. Mazzant) ("[T]he Court need not accept conclusory jurisdictional allegations, even if unchallenged."). In resolving a motion to dismiss for lack of personal jurisdiction, "the district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal quotations omitted).

A federal court sitting in diversity jurisdiction may assert jurisdiction if (1) the state's long arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Halliburton Energy Services, Inc. v Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Because the Texas long arm statute extends to the limits of federal due process, the two-step inquiry is reduced to only the federal due process analysis. *Id*. Federal due process requires a plaintiff to prove that (1) the non-resident defendant "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with

the state" and (2) "the exercise of jurisdiction … does not offend traditional notions of fair play and substantial justice." *Id*.  Minimum contacts can give rise to either specific personal jurisdiction or general personal jurisdiction. *Id*.

**B.    Basis for Dismissal: Improper Venue under Rule 12(b)(3) or 28 U.S.C. § 1406(a).**

A party may move to dismiss an action for "improper venue" under Federal Rule of Civil Procedure 12(b)(3). When a defendant challenges venue as improper, "the burden of sustaining venue will be on [the] Plaintiff." *Jerger v. D&M Leasing Dallas*, No. 4:20-CV-00309, 2020 WL 4335733, at *2 (E.D. Tex. July 28, 2020). A plaintiff may meet its burden by establishing facts that, if true, establish proper venue. *Id*. In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Id*. (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). If venue is improper, a court must dismiss the Complaint. 28 U.S.C. § 1406(a).

**C.    Basis for Transfer: Transfer Venue under 28 U.S.C. § 1404(a) or § 1406(a).**

A court may transfer an action to any district where it might have been brought if it serves "the convenience of parties and witnesses" or in "the interest of justice." 28 U.S.C. § 1404(a); 28 U.S.C. § 1406(a). Section 1404(a)'s threshold inquiry is whether the case could have first been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-203 (5th Cir. 2004) ("*Volkswagen I*"). The court next determines whether transfer is proper by analyzing and weighing private and public interest factors discussed below. *Id.* The district court should grant the transfer if the proposed transferee forum is "clearly more convenient" than the current forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

# VI.
# ARGUMENT

Plaintiff's scant jurisdictional and venue allegations do not convey either upon NBCU. Instead, the Fifth Circuit has been clear that nationwide publications cannot be hauled into court in any jurisdiction where the statements are viewed. *See Busch v. Viacom Intern., Inc.*, 477 F. Supp. 2d 764, 772–73 (N.D. Tex. 2007) (collecting cases) (a television segment that contains no references to Texas, is not directed at Texas viewers, and where no research or editing was conducted in Texas is not subject to personal jurisdiction there). Thus, NBCU requests dismissal of this case under Fed. R. Civ. P. 12(b)(2), 12(b)(3) and/or 28 U.S.C. § 1406(a), or transfer to the Eastern District of California under 28 U.S.C.§ 1404(a) or § 1406(a).

**A.     This case should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction**

       **1.     NBCU is not subject to general jurisdiction in the Eastern District of Texas because its contacts are not so continuous and systematic such that it is "at home" in the state.**

A state court may exercise general jurisdiction over a foreign defendant only when a defendant's contacts with the forum state are so continuous and systematic that a defendant is "essentially at home" in the state.[8] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Because NBCU is not incorporated in Texas and does not have its principal place of business there,[9] it may only be subject to general jurisdiction in the Eastern District of Texas in an "exceptional case."[10]

---

[8] Fifth Circuit courts apply the "at home" analysis to limited liability companies. *See Scoggins v. Dubrow*, No. H-20-3487, 2021 WL 4228609, at *3 n. 6 (S.D. Tex. May 28, 2021) (citing *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n. 10 (5th Cir. 2020)).

[9] *See* Compl. ¶ 8.

[10] The "textbook" example of an "exceptional case" occurred when a mining corporation located in the Philippine Islands moved its operation to Ohio during World War II. *See Beneplace, Inc. v. DaVita, Inc.*, No. 1:21-CV-00070-RP, 2021 WL 2905417, at *3 (W.D. Tex. July 9, 2021) (citing *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 448 (1952)). General jurisdiction was proper in Ohio, which became "the center of the corporation's wartime activities," because it conducted business there, kept files there, and made key business decisions there. *Id.* Any limited contact NBCU may have with Texas bears no resemblance to the extensive contacts in *Perkins*.

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

9

*Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337–38 (5th Cir. 2020) (citing *Daimler AG*, 571 U.S. at 138–39) (generally, a corporation's "home" falls into two "paradigmatic" places—the state of incorporation and the state where it has its principal place of business; when neither of those is in the forum state, general jurisdiction is only proper in an "exceptional case" where the corporate operations are "so substantial and of such a nature as to render the corporation at home" in the forum). Such an exceptional case occurs when the forum state is the "center of the corporation's activities." *Victor Elias Photography, LLC v. Leonardo Worldwide Corp.*, No. CV H-18-2142, 2019 WL 3713724, at *2 (S.D. Tex. Jan. 25, 2019) (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017)).

Nunes has failed to allege facts or produce evidence establishing that NBCU is "at home" in Texas. *See Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."). Nunes' bald allegation that NBCU "owns property and transacts substantial business in Texas" and maintains "corporate and retail offices and agents throughout Texas" does not show that Texas is the center of NBCU's business activities.[11] The Fifth Circuit has rejected conclusory jurisdictional allegations such as Nunes' that "MSNBC is at home in Texas and is subject to general personal jurisdiction in Texas." *See* Compl. ¶ 10; *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Furthermore, having a physical presence and doing business within a state are not "continuous and systematic" contacts. *See BNSF Ry. Co.*, 137 S. Ct.

---

[11] *See* Compl. ¶ 8.

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

at 1559 (a railroad company with over 2,000 miles of railroad track and more than 2,000 employees in Montana is not "at home" there when it operates in 28 states and is not "heavily engaged in activity in Montana.").

Courts have repeatedly rejected the broad interpretation of general jurisdiction suggested by Nunes.[12] A corporation that operates in many places, such as NBCU, cannot "be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n. 20 (the notion that a corporation would be considered "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business" is "unacceptably grasping."). General jurisdiction requires that the "corporation itself—not its managing agent or subsidiary or affiliate, must be 'at home' in the forum state." *Zoch v. Daimler, AG*, No. 6:16-CV-00057-RWS, 2017 WL 2903264, at *3 (E.D. Tex. May 16, 2017), *report and recommendation adopted*, No. 6:16-CV-00057-RWS, 2017 WL 9935519 (E.D. Tex. July 5, 2017). Because Texas is not the center of NBCU's activities, general jurisdiction is not proper in the state.

### 2.   NBCU is not subject to specific jurisdiction in the Eastern District of Texas because Texas is not the focus of the Report or the alleged harm suffered.

Specific jurisdiction exists when the forum state is "the focal point both of the story and of the harm suffered." *Revell*, 317 F.3d at 472–75 (*quoting Calder v. Jones*, 465 U.S. 783, 789 (1984)) (personal jurisdiction is proper when statements are "directed at" readers in the forum and the "brunt" of the harm is felt there). The Fifth Circuit has repeatedly held that publications available

---

[12] *See, e.g.*, *Cap. Credit Inc. v. Mainspring Am., Inc*., No. A-19-CV-797-LY, 2020 WL 4043499, at *3 (W.D. Tex. July 17, 2020) (Amazon.com Services, Inc. is not subject to general jurisdiction in Texas even though it does business in the state), *report and recommendation adopted*, 2020 WL 9810026 (W.D. Tex. Aug. 11, 2020); *Victor Elias Photography, LLC v. Leonardo Worldwide Corp*., No. CV H-18-2142, 2019 WL 3713724, at *1 (S.D. Tex. Jan. 25, 2019) (Marriott International, Inc. is not subject to general jurisdiction in Texas even though its subsidiaries do business in the state).

NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

11

nationally are not subject to specific justification in Texas when they do not focus on the state. *See id.* at 473 (simply making a news article accessible to residents of the forum state by posting it on the internet is not enough for specific jurisdiction; the defendant must "manifest an intent to *target* and *focus* on" readers in the forum state); *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (specific jurisdiction not found over an online publication in Texas when "the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state."); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) (specific jurisdiction not found over online statements in Texas because they did not focus on the state).

NBCU is not subject to personal jurisdiction in the Eastern District of Texas because Nunes does not—and cannot—adequately plead that Texas is the focus of the Report and where the "brunt" of the alleged harm was suffered.[13] Nunes' allegation that the Report was "intentionally broadcast and republished throughout Texas, including in the Eastern District, where Plaintiff suffered substantial injury" does not establish specific jurisdiction.[14] The central question for specific jurisdiction is whether the Report was "directed at Texas readers," and it was not here. *See Revell*, 317 F.3d at 473; *Francis v. Api Tech. Services, LLC*, No. 4:13-CV-627, 2014 WL 11462447, at *6 (E.D. Tex. Apr. 29, 2014, J. Mazzant), *report and recommendation adopted*, 4:13-CV-627, 2014 WL 11462449 (E.D. Tex. Sept. 11, 2014) (for personal jurisdiction to be met in an online defamation case, courts require "a showing that the activity was expressly aimed at the forum state."). NBCU and MSNBC did nothing in publishing the Report on television or the

---

[13] Nunes' conclusory allegation that "MSNBC is subject to personal jurisdiction in Texas" should not be persuasive in this motion to dismiss. *See* Compl.¶ 11; *Drs. Bethea, Moustoukas & Weaver LLC*, 376 F.3d at 403 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").
[14] *See* Compl. ¶ 11.

internet to target Texas readers. *See* Gnazzo Aff. The Report contains no mention of Texas or any activity by Nunes in the state. *Id*. NBCU's conduct is not connected to Texas in any meaningful way.[15] *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) (for personal jurisdiction, the proper focus is the relationship among the defendant, the forum, and the litigation).

Nunes' allegations that he has a "significant following and support" and "suffered substantial harm to his reputation" in Texas do not prove that he felt the "brunt" of the alleged harm there.[16] Nunes claims the Report defamed him "in his employment as a U.S. Congressman and as Ranking Member of the House Intelligence Committee,"[17] neither role having anything to do with Texas. Even if Nunes did suffer *some* alleged injury in Texas, the "brunt" of the alleged reputational harm would certainly not be felt there, where he has no relevant connections. *See Hawbecker v. Hall*, 88 F. Supp. 3d 723, 729 (W.D. Tex. 2015) ("brunt" of the injury felt where the statements were aimed and the plaintiff resided). Any connections Nunes may have to Texas pale in comparison to those in California, where he has lived his whole life and where he has served as a U.S. Representative for the state for almost two decades and fundraises for office. *See Fielding*, 415 F.3d at 427 (personal jurisdiction not proper when the "brunt of the harm" to the plaintiff's professional reputation was suffered in Germany, not Texas).

---

[15] Nunes' allegation that NBCU "owns property and transacts substantial business in Texas" and maintains "corporate and retail offices and agents throughout Texas" does not fare any better under a specific jurisdiction analysis. *See* Compl. ¶ 8. Asserting that a defendant has an office and employees in a state does not confer specific jurisdiction. *See Butowsky v. Gottlieb*, No. 4:19-CV-180, 2020 WL 5757223, at *4 (E.D. Tex. Sept. 28, 2020, J. Mazzant) (citing *Daimler AG*, 571 U.S. at 138 n. 18) ("The Supreme Court has made clear that doing business in a state is no longer a sufficient basis for personal jurisdiction."). The defendant must have "purposefully directed" its activities at residents of the forum and the litigation must result "from alleged injuries that 'arise out of or relate to' those activities." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As explained above, the Report is not directed at Texas or connected to the state in any way.

[16] *See* Compl. ¶ 7.

[17] *See* Compl. ¶ 3.

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

This case is different than *Keeton v. Hustler Magazine, Inc*. where the U.S. Supreme Court held that New Hampshire had specific jurisdiction over a magazine that "continuously and deliberately exploited the New Hampshire market" by selling and distributing thousands of magazines there each month. 465 U.S. 700, 781 (1984). The Fifth Circuit has distinguished publications available nationally, such as the Report and statements made online, from print publications, like *Hustler* magazine, that are "deliberately circulated within a forum state."[18] *See Butowsky*, 2020 WL 5757223, at *4 (holding no jurisdiction over Vox Media for an online publication not specifically targeted at Texas despite having a Texas office and employees in the state). The former are not subject to specific jurisdiction absent specific targeting of the forum state. *Id*. ("Plaintiff has failed to provide the Court with a single case in which an online publication supported a finding of specific jurisdiction when the published article at issue is not targeted at the forum state."); *see also TV Azteca v. Ruiz*, 490 S.W.3d 29, 45 (Tex. 2016) ("[T]he mere fact that the signals through which they broadcast their programs in Mexico travel into Texas is insufficient to support specific jurisdiction because that fact does not establish that Petitioners purposefully directed their activities at Texas."). As discussed above, the Report is not purposefully directed at Texas at all. Besides failing the targeting requirement, NBCU lacks the "physical distribution" that the U.S. Supreme Court considered to be a "relevant contact" in *Keeton*. *See Butowsky*, 2020 WL 5757223, at *4 (citing *Walden*, 571 U.S. at 285); s*ee also Johns Hopkins Univ. v. Nath*, 238 S.W.3d 492, 499 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("The Supreme Court discussed the large circulations in [*Calder* and *Keeton*] because they demonstrated the defendants' extensive

---

[18] This distinction makes sense: The passive contacts with states created by NBCU's ubiquitous presence across the country via the internet and social media is starkly different from the more active contacts of a magazine in 1984 that "continuously and deliberately" targeted a market for subscribers.

activities in the forum, not because they showed that the defamation was read in the forum."). In short, there is no basis for specific jurisdiction over NBCU.

**B.   This case should be dismissed under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) because a substantial part of the events giving rise to the claim did not occur in the Eastern District of Texas and NBCU has insufficient contacts with the Eastern District of Texas.**

When subject-matter jurisdiction is based on diversity of citizenship, venue is proper in:

    (1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

    (2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

    (3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). None of these requirements for venue are met. NBCU is incorporated in Delaware and has its principal place of business in New York.[19] It is not a resident of the Eastern District of Texas, so § 1391(b)(1) does not apply. A substantial part of the events or omissions giving rise to the claim did not occur in this district, so § 1391(b)(2) does not apply. And, § 1391(b)(3) does not apply both because there were other districts in which the action could have been brought and there is no jurisdiction (either general or specific) over NBCU.

    **1.   Venue is improper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b)(1) and (3) because NBCU is not subject to personal jurisdiction in this district.**

NBCU does not reside in the Eastern District of Texas and, as such, venue is not proper there under 28 U.S.C. § 1391(b)(1). As an entity, NBCU resides in any district in which it is subject

---

[19] *See* Compl. ¶ 8.

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

15

to either general or specific jurisdiction. 28 U.S.C. § 1391(c)(2). As discussed above, NBCU is not subject to general jurisdiction in the Eastern District of Texas because its contacts with the district are not so continuous and systematic such that it is "at home" in this district. NBCU is not subject to specific jurisdiction in the Eastern District of Texas because there is no "sufficient nexus" between its contacts with Texas and this case. Because there were other districts in which the case could have been brought and NBCU is not subject to personal jurisdiction in the Eastern District of Texas, venue is also improper under 28 U.S.C. § 1391(b)(3).

### 2. Venue is improper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim did not occur in this district.

Venue is proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The events giving rise to the defamation claim occurred in New York, where MSNBC prepared the Report and where NBCU and MSNBC have headquarters; Washington, D.C., where Nunes' conduct discussed in the Report occurred; and California, where Nunes resides and was allegedly injured. None of the events giving rise to the claim occurred in Texas. In determining venue under section 1391(b)(2) in defamation cases, courts have found that a *substantial* part of the events giving rise to the claim occur in the district where the plaintiff resides and the alleged injury to reputation is felt. *Hawbecker*, 88 F. Supp. 3d at 731 (citing 14D Charles Alan Wright, Federal Practice and Procedure § 3806 (4th ed.)) (venue is proper in San Antonio under section 1391(b)(2) because the plaintiff resided in San Antonio and suffered an alleged injury to his reputation there); *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F. Supp. 950, 958 (S.D. Tex. 1996) (venue is proper in Houston under section 1391(b)(2) because plaintiff resided in Houston and the effects of an allegedly defamatory letter

NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

16

were felt there). Accordingly, venue is proper under section 1391(b)(2) in the Eastern District of California, not the Eastern District of Texas, because Nunes resides there and a substantial part of any reputational harm as a result of the alleged defamation—Nunes' only claim—would have been felt there, where he represents California's 22nd Congressional District.[20] *See Seidel v. Kirby*, 296 F. Supp. 3d 745, 753 (D. Md. 2017) (collecting cases) (agreeing with other courts that venue under section 1391(b)(2) is proper where the plaintiff resides and the alleged harm was felt). The *Seidel* court explained why courts have adopted this policy for defamation claims. Because section 1391(b)(2) asks where the *substantial* events giving rise to a claim occur, it can't be the rule that venue is proper anywhere a plaintiff is injured. It must be where the *substantial* harm to the plaintiff's reputation occurred, which is typically where the plaintiff resides. *Id*. (a party's residence is "where people are exposed to the material who may actually know the plaintiff or interact with him in a way that could be affected by the information"); *see also Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc*., 6:07-CV-1626ORL19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (venue under section 1391(a)(2) is proper in the district where the injured party resides and suffers harm to its reputation). Given the foregoing, venue is proper under section 1391(b)(2) in the Eastern District of California.

**C.** **In the alternative, this case should be transferred to the Eastern District of California under 28 U.S.C. § 1404(a) or § 1406(a) because it could have been brought there and it is a more convenient venue for the parties and witnesses.**

If the Court decides not to dismiss this case, it should, at a minimum, transfer it to the Eastern District of California, a more convenient venue where Nunes resides, NBCU is headquartered, and where the case could have originally been brought. 28 U.S.C. § 1404(a). The

---

[20] *See* Compl. ¶ 19 (The Report "prejudice[s] Plaintiff in his profession and employment as a United States Congressman and as a Ranking Member of the House Intelligence Committee.").

private and public interest factors courts consider under section 1404(a) show that the Eastern District of California is "clearly more convenient" than the Eastern District of Texas: Neither party resides in Texas; none of the events giving rise to the claim occurred there; and none of the witnesses or evidence is in Texas. On the other hand, Nunes resides in California; NBCU is headquartered and employs thousands of people in California, the brunt of any alleged reputational harm would have been felt in California, where his constituents are; witnesses and evidence are located there (as well as likely New York and possibly Washington D.C.); California has an interest in resolving this case involving the rights of one of its citizens; California will be more familiar with the law that will apply; and it will be cheaper for the parties to litigate there. *See Sarver v. Hurt Locker, LLC*, No. 2:10-CV-01076 DMC MF, 2010 WL 4810813, at *4 (D.N.J. Nov. 18, 2010) (transferring case to California under § 1404(a) when plaintiff's choice of New Jersey as a forum seemed "nothing less than arbitrary" because he did not reside there and the parties, witnesses, documents, and events giving rise to the litigation were not tied to the state "in any meaningful way").

Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Section 1404(a)'s threshold inquiry is whether the case could have first been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) ("*Volkswagen I*"). If so, the court determines whether transfer is proper by weighing various private and public interest factors discussed below. *Id.* Transfer should be granted if the transferee forum is "clearly more convenient" than the current forum. *In re Volkswagen of Am., Inc.*, 545

NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue

18

F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). This standard does not equal "clear and convincing," but the moving party must show more than a mere preponderance of convenience. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

The "clearly more convenient" standard reflects a deference to the plaintiff's choice of venue. *See Volkswagen II*,  545 F.3d at 314–15. But here, where Nunes does not live in Texas and the case has no connection to the state, his choice of forum is, instead, entitled to "little or no deference." *Miller v. Kevin Gros Marine, Inc*., No. G-05-531, 2006 WL 1061919, at *3 (S.D. Tex. Apr. 20, 2006) (transferring the case to the Eastern of District of Louisiana, where the plaintiff lived and the alleged injury was felt); *see also Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district;" transferring the case to California even though the plaintiff filed it in New York). When the plaintiff lacks a nexus to the chosen forum, transfer to a plaintiff's home district is favored. *See Potts v. Cameron Offshore Boats, Inc*., 401 F. Supp. 2d 733, 739 (S.D. Tex. 2005). In *Potts*, the Southern District of Texas transferred a case to the Eastern District of Texas, despite the plaintiff's original choice of forum, because, like Nunes, the plaintiff lived in the transferee forum and it would be more convenient for parties and witnesses. *Id*. ("Plaintiff cannot complain of a transfer to his home District.").

The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy,

expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id*. The public and private factors are "not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 315.

### 1.   This case could have been filed in the Eastern District of California because California is the focal point of the Report and the alleged harm suffered and a substantial part of the events giving rise to the claim occurred there.

This case should be transferred to the Eastern District of California because NBCU is subject to subject-matter and personal jurisdiction there for purposes of this matter, and venue is proper under 28 U.S.C. § 1391(b)(2). Subject-matter jurisdiction exists because the parties are citizens of different states and the alleged amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Compl. ¶¶ 7–9; 28 U.S.C. § 1332.

A state may exercise specific jurisdiction over a non-resident defendant that has purposefully directed his activities at residents of the forum and the alleged injury arises out of or relates to those activities. *Clemens*, 615 F.3d at 378. In a libel case, specific jurisdiction exists when the forum state is "the focal point both of the story and of the harm suffered." *Revell*, 317 F.3d at 472–75 (*quoting Calder*, 465 U.S. at 789) (personal jurisdiction is proper when statements are "directed at" readers in the forum and the "brunt" of the harm is felt there).

California has personal jurisdiction over this case because it "is the focal point both of the story and of the harm suffered." *Id.*  The Report critiqued Nunes' fitness as a U.S. Representative

NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue

20

for the 22nd Congressional District of California. Maddow questioned Nunes' association with an alleged Russian agent, his conduct at a House Intelligence Committee hearing, and his handling of a package sent by the agent. Maddow ended the Report by questioning whether Nunes should maintain his leadership role on the House Intelligence Committee. Nunes himself alleges that the Report defamed him "in his employment as a U.S. Congressman"—*i.e.*, in the position he holds to represent his district in California. *See* Compl. ¶ 19. To the extent Nunes' reputation is harmed by the Report, the "brunt of the harm" would be felt in the California district where his over 750,000 constituents live, where Nunes is a long-time citizen, and where Nunes primarily fundraises for office.[21] Because the Report focused on California by criticizing a California Congressperson in the performance of his formal duties and the brunt of the alleged harm was felt there, NBCU "should reasonably anticipate being haled into court" there for purposes of this claim. *See Revell*, 317 F.3d at 475–76; *see also McVea v. Crisp*, SA-07-CA-353-XR, 2007 WL 4205648, at *2 (W.D. Tex. Nov. 5, 2007), *aff'd*, 291 Fed. Appx. 601 (5th Cir. 2008) (even when the statements are "not limited in their aim solely to" the state, personal jurisdiction is proper when the statements concern the state and the defendant knew the brunt of the injury would be felt in the state).

As discussed above, venue is proper in defamation cases under section 1391(b)(2) in the district where the plaintiff resides and the alleged injury to reputation is felt. *See Hawbecker*, 88 F. Supp. 3d at 731 (venue is proper where plaintiff resided and suffered an alleged harm); *Seidel*, 296 F. Supp. 3d at 753 (collecting cases) (agreeing with other courts that the "substantial part of

---

[21] Nunes acknowledges that the alleged harm would be most felt in California. *See* Compl. ¶ 3.

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

the events" in a defamation action occur where the plaintiff resides). Because Nunes resides in Eastern District of California and suffered an alleged injury there, venue is proper in that district.

2.    **The public and private factors support transferring the case to the Eastern District of California.**

All eight factors considered in transferring a case under 28 U.S.C. § 1404(a) either favor transfer or are neutral. Adjudicating this case in the Eastern District of California instead of this district is clearly more convenient for both parties and serves the interest of justice. California is Nunes' home state, where NBCU is headquartered, closer to much of the witnesses and evidence (and likely all the witnesses and evidence as to his alleged harm), has a factual connection with the claim, and its law governs the case. Although Nunes sued in the Eastern District of Texas, his choice of venue is not relevant because he has no connection to the forum. *See Miller*, 2006 WL 1061919, at *3 ("little to no deference" should be given to a plaintiff's choice of forum when the plaintiff lacks connections to the forum). Regardless of the initial forum, the Eastern District of California, where Nunes is a citizen, is clearly more convenient for all parties. *See Klutho v. 21ST Century Ins. Co.*, No. 07C4111, 2007 WL 4224296, at *3 (N.D. Ill. Nov. 26, 2007) ("Although plaintiff submits an affidavit claiming this district is equally convenient, common sense dictates that her home forum is still most convenient."). Not only will transferring the case not cause Nunes hardship, it will benefit him. *See True Chem. Sols., LLC v. Performance Chem. Co.*, 7-18-CV-00078-ADA, 2021 WL 860009, at *2 (W.D. Tex. Mar. 8, 2021) (courts consider the hardships the plaintiff would suffer from transferring the action to the transferee venue).

a.    **The private factors support transferring the case to the Eastern District of California.**

i.    *The "relative ease of access to sources of proof" factor favors transfer because pertinent documents are likely to be found in the*

> *Eastern District of California, while none will be found in this district.*

Courts looks to where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. This factor favors transfer because pertinent documents are likely to be found in the Eastern District of California, while no relevant documents will be found in the Eastern District of Texas.[22] Documents belonging to Nunes and MSNBC are likely to be the main sources of evidence in this case. These documents may clarify whether Nunes received a package from Derkach and whether he refused to show it to members of the intelligence community or the FBI.[23] They also may show MSNBC's state of mind at the time of publication.[24] Any documents NBCU and MSNBC possess would likely be in New York, and Nunes' documents are likely stored in California, where he has Congressional offices,[25] as well as Washington, D.C. No sources of proof will be in the Eastern District of Texas. This factor thus favors transfer.

> *ii.   The "availability of compulsory process to secure the attendance of witnesses" factor favors transfers because more third-party witnesses reside in the Eastern District of California than this district.*

Courts consider whether a venue has subpoena power over third-party witnesses. *Volkswagen II*, 545 F.3d at 316. This factor favors transfer. At this early stage of the litigation,

---

[22] That documents may be stored electronically does not undermine the importance of their location. *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *rep. & rec. adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quoting *Volkswagen II*, 545 F.3d at 315) ("[T]he Fifth Circuit [has] clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'").

[23] This evidence concerns the alleged falsity of the Report, an element Nunes must prove in his defamation claim. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019).

[24] This evidence concerns whether NBCU acted with actual malice, an element Nunes must prove in his defamation claim because he is a public official. *Id*. at 744.

[25] Nunes has an office at 264 Clovis Avenue, Suite 206, Clovis CA, 93612 and 113 North Church Street, Suite 208, Visalia, CA 93291. *See Office Locations*, Devin Nunes Serving California's 22nd District, https://nunes.house.gov/contact/offices.htm (last visited Oct. 7, 2021).

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

NBCU can identify at least seven third-party witnesses who may be needed if there is a trial, none of whom reside in Texas. Those witnesses are Nunes' Chief of Staff Julian Plank, Nunes' Communications Director Jack Langer, former U.S. Attorney General William Barr, U.S. Representative Sean Patrick Maloney, U.S. Representative Adam Schiff, Ukrainian lawmaker Andriy Derkach, and a corporate NBCU representative involved in the production of the Report. Other witnesses include Nunes' "designated staff member" (*See* Compl. ¶ 12), a representative from the House Intelligence Committee, a representative from the FBI, individuals with knowledge of any alleged reputational harm, and other individuals familiar with Nunes' handling of the package. These witnesses may possess knowledge of whether Nunes received a package from Derkach and whether he refused to show it to other members of the intelligence community or the FBI. The corporate NBCU witness may possess knowledge of MSNBC's state of mind at the time of publication.

None of the potential third-party witnesses have a connection to Texas. Schiff, as a California Representative, is a citizen of California, and Plank and Langer have ties to California.[26] The other third-party witnesses likely reside in New York, Washington, D.C., and Ukraine. Still, this factor favors transfer because more third-party witnesses reside in California than Texas. *See Soverain Software LLC v. Oracle Corp.*, 6:12-CV-141, 2014 WL 12621273, at *3 (E.D. Tex. Mar. 27, 2014) ("This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.").

> iii.   The "cost of attendance for willing witnesses" factor favors transfer because witnesses live in California, while no witnesses live in Texas.

---

[26] Both Plank and Langer worked for a U.S. Representative serving California's 22nd Congressional District.

**NBCU's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Motion to Transfer Venue**

Courts analyze this factor by using the "100-mile rule." *Soverain Software LLC*, 2014 WL 12621273, at *4 (citing *Volkswagen I*, 371 F.3d at 204–05). When the distance between the existing and proposed venue is more than 100 miles, as it is here, courts determine the distances between the residences of all witnesses and the transferor and transferee venues. *Id*. Transfer is favored if the transferee venue is a shorter average distance from witnesses than the transferor venue. *Id*. But the "100-mile rule" should not be rigidly applied. *Id*. (citing *In re Genentech, Inc*., 566 F.3d 1338, 1344 (Fed. Cir. 2009)). "In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper." *Id*.

This factor favors transfer because no potential witnesses are Texas residents. On the other hand, Nunes and Schiff are California citizens, and Plank and Langer have ties to California. Although this district appears mid-way between the East and West Coast, courts should not use a court's "central location as a consideration in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech, Inc.*, 566 F.3d at 1344. Here, when some witnesses are citizens of California and none reside in Texas, this factor favors transfer. *Id*. (transfer favored when witnesses resided in California and no witnesses resided in the Eastern District of Texas).

> iv.  *The factor considering whether there are "practical problems that make trial of a case easy, expeditious and inexpensive" is neutral because none exist.*

Courts consider problems rationally based on judicial economy, such as the existence of duplicative suits or similar issues that may create practical difficulties for the parties. *Volkswagen II*, 556 F.3d at 1351. This factor is neutral because this case is in its early stages. This Motion is the first substantive filing since Nunes filed the Complaint on August 3, 2021. Thus, no practical problems exist that would deter this Court from transferring this case. *See In re Radmax, Ltd*., 720

F.3d 285, 289 (5th Cir. 2013) ([G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case."); *see also Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-CV-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016, J. Mazzant) (finding this factor neutral even after discovery had begun).

### b.   The public factors support transferring the case to the Eastern District of California.

#### i.   *The "administrative difficulties flowing from court congestion" factor is neutral because of its limited utility.*

Courts consider "the speed with which a case can be resolved and come to trial." *Soverain Software LLC*, 2014 WL 12621273, at *5. This factor is neutral. As of June 30, 2021, an average case reached trial 20.4 months after filing in the Eastern District of Texas, while an average case reached trial 31.2 months after filing in the Eastern District of California as of June 30, 2020 (2021 data is unavailable).[27] Although this court may be slightly more efficient, time to trial records are "given little weight" because of their "speculative nature." *Soverain Software LLC*, 2014 WL 12621273, at *8 (this factor was neutral even though the average time to trial was shorter in the forum state); *see also In re Genentech, Inc.*, 566 F.3d at 1347 (this factor is the most speculative and case-disposition statistics may not always tell the whole story). "There is much more that affects court congestion than simply the number of pending cases per judge." *Coleman v. Brozen*, 4:19-CV-705, 2020 WL 2200220, at *7 (E.D. Tex. May 6, 2020, J. Mazzant) ("Different interpretations of the statistics can produce different conclusions about the relative workloads of each judicial district.").

---

[27] *See United States District Courts — National Judicial Caseload Profile*, FEDERAL COURT MANAGEMENT STATISTICS, June 2021, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

> ii.    The "local interest in having localized interests decided at home"
>        factor favors transfer because the Eastern District of California has
>        an interest in this case involving one of its citizens.

Courts consider the "factual connection" of a case with the transferor and transferee venues. *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) ("[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). This factor favors transfer because the Eastern District of California has an interest in this case involving Nunes, one of its most high-profile citizens. *See Nat'l Ass'n of Home Builders v. U.S. E.P.A.*, 675 F. Supp. 2d 173, 177 (D.D.C. 2009) (a state has a local interest when a case affects the rights and interests of its citizens). This is especially true in defamation cases. *See Oxysure Sys., Inc. v. Castaldo*, No. 4:15-CV-324, 2016 WL 1031172, at *5 (E.D. Tex. Mar. 15, 2016, J. Mazzant) (the local interests of a district that is "home to a party" are strong when "the suit may call into question the reputation of individuals that work and conduct business in the community."). A California jury of Nunes' peers, not one thousands of miles from his home, should decide this case. *See Tansey v. City of Keller, Tex.*, No. 3:11-CV-03289-N BF, 2012 WL 2092935, at *3 (N.D. Tex. May 21, 2012), *report and recommendation adopted*, No. 3:11-CV-03289-N BF, 2012 WL 2092900 (N.D. Tex. June 8, 2012) ("The unfairness of burdening citizens in an unrelated forum with jury duty also weighs in favor of transfer."). On the other hand, Texas has no localized interest in this case. Neither party lives in Texas and none of the witnesses, evidence, claims, or defenses have a connection to the state. *See Hem v. Toyota Motor Corp.*, 2:07-CV-079-CE, 2009 WL 2591374, at *5 (E.D. Tex. Aug. 20, 2009) (transfer is appropriate when none of the operative facts occurred in the forum and where the forum has no particular local interest in the outcome of the case).

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

27

> iii.  The *"familiarity of the forum with the law that will govern the case"* factor favors transfer because the Eastern District of California will have more familiarity with California law, which will apply in this defamation case.

Courts consider each district's familiarity with the case and the laws at issue. *See Van Dusen v. Barrack*, 376 U.S. 612, 643 (1964) (a court's familiarity with the governing laws should be considered in deciding a motion to transfer); *Monster Cable Products, Inc. v. Trippe Mfg. Co*., No. 9:07-CV-286, 2008 WL 2492060, at *4 (E.D. Tex. June 18, 2008) (this factor favored transfer to the Middle District of Louisiana when Louisiana law applied). This factor favors transfer because the Eastern District of California will have more familiarity with California law, which is likely to apply in this case. *See Interactive Music Tech., LLC v. Roland Corp. U.S.*, No. 6:07-CV-282, 2008 WL 245142, at *9 (E.D. Tex. Jan. 29, 2008) (even though courts in Texas and California are equally familiar with the type of law at issue (patent law), this factor favors transfer because California judges are "better versed in applying California law"). Under choice of law rules in Texas, which has adopted the "most significant relationship" test to determine which state's law applies in a tort action, the law where the plaintiff is domiciled—here, California—is presumed to apply in defamation cases. *See Levine v. CMP Publications, Inc*., 738 F.2d 660, 667 (5th Cir. 1984) (quoting Restatement (Second) of Conflicts, § 150(2)) (in a defamation action, "the state of most significant relationship will usually be the state where the person was domiciled at the time"); *see also Sarver v. Chartier*, 813 F.3d 891, 898–99 (9th Cir. 2016) (in a defamation case involving a film distributed across the country, California law applied under the "most significant relationship" test because the plaintiff was domiciled there at the time of the film's release, he suffered alleged reputational harm there, "where his various friends and family live," and California had an interest in the "continued participation in matters of public significance"); *Nunes v. Cable News Network,*

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

28

*Inc.*, No. 20 CV 03976-LTS-OTW, 2021 WL 665003, at *5 (S.D.N.Y. Feb. 19, 2021) (California law applied to a defamation claim brought by Nunes in New York because he was injured primarily in California, the state of his domicile, and he runs for election there). It goes without saying, California courts are more familiar with California law, so this factor supports transfer.

> iv. The *"avoidance of unnecessary problems of conflict of laws or in the application of foreign law"* factor is neutral because no such problems exist.

This factor is neutral because California law will apply under either district's choice of law analysis. *See Bride Ministries, NFP v. DeMaster*, 4:20-CV-00402, 2020 WL 6822836, at *11 (E.D. Tex. Nov. 20, 2020, J. Mazzant) (this factor is neutral when transferring the case does not change the governing law). As noted above, California law is likely to apply in this defamation case under Texas choice of law rules. California law is also likely to apply under California choice of law rules because under the state's "governmental interest approach," California has an interest in the reputation of its citizen. *See Matter of Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986) (law of California, where the plaintiffs resided, applied in a defamation action under California choice of law rules rather than the law of New York, where the defendants resided, because California "is the state where the damage to plaintiffs' reputation, if any, would have occurred;" New York has "absolutely no interest in the reputation of a California citizen.").

## VII.
## CONCLUSION

NBCU respectfully requests that this Court dismiss this case under Fed. R. Civ. P. 12(b)(2), 12(b)(3) and/or 28 U.S.C. § 1406(a) or, in the alternative, transfer this case to the Eastern District of California under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

Respectfully submitted,

By: */s/ Laura Lee Prather*
Laura Lee Prather
State Bar No. 16234200
laura.prather@haynesboone.com
HAYNES AND BOONE, LLP
600 Congress Ave., Ste. 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 28th day of October, 2021, a true and correct copy of

the above document was served via the CM/ECF system to the following counsel of record:

Madhu Sekharan
16614 Radiant Lilac Trl
Cypress, TX 77433-6365
281-304-6369 (phone)
MSekharanAttorney@outlook.com

*/s/ Laura Lee Prather*
Laura Lee Prather

**NBCU'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**