IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
Sherman Division

| | | |
|---|---|---|
| DEVIN G. NUNES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00608-ALM |
| | ) | |
| | ) | |
| NBCUNIVERSAL MEDIA, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, pursuant to Local Rule 7(e), respectfully submits this Memorandum in Opposition to Defendant, NBCUniversal Media, LLC's ("NBCUniversal"), motion to dismiss for lack of personal jurisdiction and improper venue under Rules 12(b)(2), 12(b)(3) and 28 U.S.C. § 1406(a), or, in the alternative, its motion to transfer venue pursuant to 28 U.S.C. § 1404(a). [*ECF No. 5*].

## I.   INTRODUCTION

This is an action for defamation.  On March 18, 2021, during a segment of *The Rachel Maddow Show*, NBCUniversal broadcast false and defamatory statements about Plaintiff to its cable television subscribers and viewers in Texas and elsewhere.  In addition to its subscribers and viewers, NBCUniversal repeated and republished the false and defamatory statements to millions more in Texas and elsewhere via various social media properties, including the **@MaddowBlog** on Twitter and the 4,240,000 who subscribe to MSNBC's YouTube channel. [*ECF No. 1 ("Compl."), ¶¶ 2, 4*].  Plaintiff

alleges that MSNBC is at home in Texas and is subject to general personal jurisdiction in Texas, and that venue is proper in this Court because the false statements were intentionally broadcast and republished throughout Texas, including in the Eastern District, where Plaintiff suffered substantial injury. [*Compl., ¶¶ 10-11, 20*].

## II. JURISDICTIONAL ALLEGATIONS

Plaintiff is a United States Congressman.  As a member of the House Permanent Select Committee on Intelligence (the "House Committee"), he participates in oversight of the U.S. national security apparatus, including the intelligence-related activities of seventeen agencies, departments, and other elements of the United States Government.[1] Plaintiff has a significant following and support in Texas (contributors, 100,000+/- subscribers to direct communications, and social media followers in excess of 200,000). Plaintiff alleges that he suffered substantial harm to his reputation in Texas as a result of NBCUniversal's publications and republications in Texas. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-777 (1984) ("[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977).  The reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous.  The communication of the libel may create a negative reputation among the residents of a jurisdiction where the plaintiff's previous reputation was, however small, at least unblemished."). [*Compl., ¶ 7*].

---

[1]    Numerous members of the intelligence community live and work in Texas.  In late 2020 and early 2021, the Director of National Intelligence ("DNI") was John Ratcliffe from Texas.

NBCUniversal is a Delaware limited liability company headquartered in New York.  On its website, NBCUniversal represents that

> "[w]e are one of the world's leading media and entertainment companies in the development, production, and marketing of entertainment, news and information to a global audience.
>
> NBCUniversal owns and operates a valuable portfolio of news and entertainment television networks, a premier motion picture company, significant television production operations, a leading television stations group, world-renowned theme parks, and a premium ad-supported streaming service.  NBCUniversal is a subsidiary of Comcast Corporation."

[https://www.nbcuniversal.com/about].[2]   Plaintiff alleges that NBCUniversal "owns property and transacts substantial business in Texas.  It maintains corporate and retail offices and agents throughout Texas, including in Austin, Dallas, Dallas-Fort Worth, El Paso, Houston, McAllen and San Antonio." [*Compl., ¶ 8*].  The complaint points out that one of NBCUniversal's premier news brands is "MSNBC".  "Reaching more than 96 million households worldwide, including millions in Texas, MSNBC offers a full schedule of live news coverage, progressive voices, documentary programming – 24 hours a day, 7 days a week.  MSNBC delivers breaking news and information across a variety of platforms, including www.msnbc.com." [*Compl., ¶ 8*].  Plaintiff contends that "MSNBC also promotes its business and causes via Twitter.  MSNBC's Twitter account,

---

[2]      In its annual report on form 10-K, filed with the Securities and Exchange Commission on February 4, 2021, Comcast Corporation ("Comcast") confirms that "NBCUniversal is one of the world's leading media and entertainment companies that develops, produces and distributes entertainment, news and information, sports, and other content for global audiences".  In terms of the "advertising reach to U.S. households", Comcast represents that MSNBC reached approximately 83,000,000 households as of December 31, 2020. [*Comcast 2020 Annual Report on SEC Form 10-K, p. 6*].  MSNBC's Rachel Maddow was the most-watched host in cable news in the first quarter of 2021, with *The Rachel Maddow Show* delivering an average total audience of 3.604 million viewers. [https://www.forbes.com/sites/markjoyella/2021/03/30/rachel-maddow-has-most-watched-show-in-first-quarter-cable-news-ratings/?sh=2eef9ab77505].

**@MSNBC**, has 4,100,000 followers, including hundreds of thousands in Texas.  Rachel Maddow is the host of *The Rachel Maddow Show*, which airs weeknights at 9:00 p.m. on MSNBC … Maddow and her agents have a blog, https://www.msnbc.com/maddowblog, and a Twitter account with over 1,200,000 followers." [*Compl., ¶ 8*].[3]

### III.  DISCUSSION

On October 28, 2021, NBCUniversal filed a motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).  In the alternative, NBCUniversal filed a motion to transfer the case to the United States District Court for the Eastern District of California pursuant to Title 28 U.S.C. § 1404(a).  NBCUniversal attached and included two (2) declarations with its motions. [*ECF Nos. 5-1 and 5-2*].  **Significantly, neither declaration challenges the jurisdictional facts alleged in Plaintiff's Complaint**.

A.     ***NBCUniversal Is Subject To Personal Jurisdiction In Texas***

Where a District Court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing, "the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Thiam v. T-Mobile USA, Inc.*, 2021 WL 1550914, at * 1 (E.D. Tex. 2021) (Mazzant, J.).  "Proof by a preponderance of the evidence is not required." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "In making its

---

[3]     On November 3, 2021, Plaintiff filed a motion to permit jurisdictional discovery and to adjust deadlines. [*ECF No. 8*].  The Court has not yet ruled on Plaintiff's motion.  Accordingly, Plaintiff reserves the right to supplement this opposition with additional jurisdictional facts upon the receipt of jurisdictional discovery showing the nature, frequency and full extent of NBCUniversal's business contacts with Texas.

determination, the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 344 (5th Cir. 2002).  The Court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *First Investment Corporation of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 746 (5th Cir. 2012); *Thiam*, 2021 WL 1550814 at * 1 ("[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists.") (quotation and citation omitted).

### 1.    <u>Personal Jurisdiction Framework</u>

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009)).  "[B]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston*, 523 F.3d at 609; *Religious Tech. Ctr. V. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

A court's exercise of jurisdiction over a nonresident defendant comports with Due Process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in the state "does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The minimum contacts analysis ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).  The requirements of the Due Process clause can be met through establishing either general or specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415 (1984); *Thiam*, 2021 WL 1550814 at * 2 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

### a.    General Jurisdiction

General jurisdiction exists whenever a foreign corporation engages in continuous and systematic general business contacts with the forum State. *International Shoe Company*, 326 U.S. at 318 (general jurisdiction exists where a foreign corporation's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."); *id. Hall*, 466 U.S. at 416 (the pertinent question is whether defendant had "continuous and systematic general business contacts" with the forum state); *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) ("general jurisdiction relies on the defendant itself being tied up—almost entangled in a web—with the forum state.").

Since *International Shoe* and *Hall*, the United States Supreme Court has explained that, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cited in *Daimler A.G. v. Bauman*, 571 U.S. 117, 127 (2014)).  There is

no single formula or set of circumstances that establishes when a corporation is "essentially at home" in a given State.  The United States Supreme Court has observed that place of incorporation and principal place of business are "paradig[m]"[4] places where a corporation is "essentially at home", *Daimler*, 571 U.S. at 137.  "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 684, 717 (5th Cir. 1992) (citation omitted) (cited in *Thiam*, 2021 WL 1550814 at * 2)).  Finding general jurisdiction where an individual or company is outside of its domicile, place of incorporation, or principal place of business "requires a showing of a defendant's substantial, continuous, and systematic contact with the forum." *BioTE Medical, LLC v. Jacobsen*, 2020 WL 6781515, at * 3 (E.D. Tex. 2020) (Mazzant, J.) (citing *Johnston*, 523 F.3d at 609)); *see Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F.Supp.2d 483, 497 (E.D. Va. 2003) ("this Court must determine whether it may exercise general jurisdiction over Bell and Continental, meaning Bay must prove that each defendant has fairly extensive, continuous, and systematic contacts with Virginia").

### b.    Specific Jurisdiction

Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the Due Process standard.  When considering specific jurisdiction in connection with a claim for tortious conduct, a single act by a defendant directed towards Texas that gives rise to a cause of action can support a finding of minimum contacts. *Wien Air Alaska, Inc. v. Brandt*, 195

---

[4]        "Paradigm" means a typical example or pattern of something: a framework. [https://www.merriam-webster.com/dictionary/paradigm].

F.3d 208, 211 (5ᵗʰ Cir. 1999).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).  A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5ᵗʰ Cir. 1985).  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5ᵗʰ Cir. 1982).

The Fifth Circuit applies a three-step analysis to determine if a non-resident defendant is subject to specific personal jurisdiction.  For the Court to exercise specific jurisdiction, the Court must determine "(1) whether the defendant has ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Thiam*, 2021 WL 1550814 at * 2 (citations and quotation omitted).  At step one, Texas follows the "stream-of-commerce test", which is typically invoked in cases in which "a nonresident defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately causes harm *inside* the forum."  In the Fifth Circuit, "mere foreseeability or awareness" that the accused product will reach the forum state's market is "a constitutionally

sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Thiam*, 2021 WL 1550814 at * 4 (quoting *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006))); *see id. In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781 (5th Cir. 2018) ("J & J's significant role in placing the Ultamet into the stream of commerce with the expectation that it would be purchased by consumers in Texas rendered J & J amenable to suit for injuries caused by the Ultamet in Texas.   The district court properly exercised personal jurisdiction over J & J.").

Recently, in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), the Supreme Court clarified that plaintiffs need not show a "strict causal relationship between the defendant's in-state activity and the litigation" in order to establish personal jurisdiction. *Id.* at 1026.  The *Ford* case involved plaintiffs in Montana and Minnesota who claimed injuries from malfunctioning automobiles. *Id.* at 1019.  The Court held that Ford Motor Company was subject to personal jurisdiction in Montana and Minnesota because "Ford had advertised, sold, and serviced those [malfunctioning] two car models in both States for many years." *Id.* at 1028.  "In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.*   In this case, Plaintiff alleges that NBCUniversal systematically served a market in Texas for the very news program, *The Rachel Maddow Show*, that defamed Plaintiff and caused him injury in Texas.

### 2. *NBCUniversal Is Subject to General Jurisdiction In Texas*

NBCUniversal is an omnipresent player in today's global economy.[5]  By its own admissions, NBCUniversal is one of the "world's" leading media and entertainment companies.  NBCUniversal develops, produces and markets news and information to a "global audience".  Its "advertising reach" to U.S. Households is enormous.  As of December 31, 2020, *one* of NBCUniversal's many "national cable networks", MSNBC, reached approximately 83,000,000 households in the United States.  NBCUniversal owns and operates 11 NBC-affiliated local broadcast television stations [*Comcast 2020 Annual Report on SEC Form 10-K ("Comcast 2020 10K"), p. 7 – attached as Exhibit "A"*], including NBC Owned Television Stations in Dallas-Fort Worth, El Paso, Galveston, Houston, San Antonio, Brinson, Treakle, Rio Grande City, Amarillo and many other cities in Texas.   [https://together.nbcuni.com/n/nbc-owned-television-stations/].[6]   In addition to broadcasting the NBC network's national programming, NBCUniversal's "local broadcast television stations produce news, sports, public affairs and other content that addresses the local needs" of Texans. [*See Comcast 2020 10K, p. 7*].

---

[5]     As Justice Sotomayor observed in *Daimler*, a multinational conglomerate, like NBCUniversal, can be "at home" in multiple forums:

> "What has changed since *International Shoe* is not the due process principle of fundamental fairness but rather the nature of the global economy.  Just as it was fair to say in the 1940's that an out-of-state company could enjoy the benefits of a forum State enough to make it 'essentially at home' in the State, it is fair to say today that a multinational conglomerate can enjoy such extensive benefits in multiple forum States that it is 'essentially at home' in each one."

*Daimler*, 571 U.S. at 156 (Sotomayor, J.) (concurring).

[6]     In addition to its ownership of the NBC Owned Television Stations, NBCUniversal owns numerous companies that are registered to transact business in Texas, including MSNBC Cable, LLC, MSNBC Interactive News, LLC, Telemundo of Texas, LLC, Houston Sportsnet Holdings, LLC, and many others.

NBCUniversal's latest service is "PeacockTV.com".  Peacock is NBCUniversal's "new premium ad-supported direct-to-consumer video on demand streaming service featuring NBCUniversal content including exclusive Peacock originals, current NBC and Telemundo shows, news, late-night comedy, live sports and a library of television shows and movies, providing customers access to tens of thousands of hours of programming." [*Comcast 2020 10K, p. 10*].[7]  NBCUniversal had gross revenues in 2020 of $28.1 Billion, of which $10.8 billion came from its cable network business and $10.2 came from its broadcast television business.  Revenue from its cable networks is generated primarily from the distribution and licensing of programming and from the sale of advertising on NBCUniversal's networks and digital properties. [*Comcast 2020 10K, pp. 6, 48-50, 78, 82*].  Although the precise sum of the revenues derived from its Texas-based operations is unknown without discovery, publicly available statements strongly indicate that NBCUniversal's revenues from ongoing Texas-based operations are massive. [*See, e.g.,* https://www.linkedin.com/in/tony-canales-452b526 (Since 2012, KTMD-TV in Houston "more than doubled top-line sales and quadrupled bottom-line revenue within 5 years. Such success stems from audience growth climb to now delivering Houston's #1 largest Adult 18-49 audiences during Primetime and Late News, in any language.").  NBCUniversal has such a deep and continuous connection with Texas that in 2015 it filed an application with the United States Patent and Trademark Office to trademark the

---

[7]     NBCUniversal actively recruits Texans for employment at its various locations in Texas. [https://www.nbcunicareers.com/all-locations].   NBCUniversal is hiring for communications and public relations, content development and programming, digital media, editorial, marketing, production, sales, technology and engineering positions in Texas. [*See, e.g.,* https://www.linkedin.com/jobs/view/morning-producer-nbc-5-dallas-at-nbcuniversal-2790375520; https://www.linkedin.com/jobs/view/news-producer-tlmd-mcallen-at-nbcuniversal-2768940510].

phrase "**TEXAS CONNECTS US**".[8]  In its motion to dismiss, NBCUniversal does not dispute that it "owns property and transacts substantial business in Texas" or that it "maintains corporate and retail offices and agents throughout Texas, including in Austin, Dallas, Dallas-Fort Worth, El Paso, Houston, McAllen and San Antonio." [*Compl.,* ¶ *8*].[9] NBCUniversal does not dispute that its programming, delivered across a variety of platforms, including www.msnbc.com, reaches "millions in Texas". [*Id.*].  NBCUniversal does not dispute that it promotes its business and causes via Twitter and that it has "hundreds of thousands [of followers] in Texas." [*Id.*].  Importantly, NBCUniversal cannot dispute that in other litigation in this Court, NBCUniversal admitted that it is subject to personal jurisdiction. [*See, e.g., Personal Audio, LLC v. NBC Universal Media, LLC*, Case 2:13-cv-00271-JRG/RSP (E.D. Tex.) (Document 9 – Answer to Amended Complaint, ¶ 6 ("NBC admits for purposes of this action that this Court has personal

---

[8]    A copy of NBCUniversal's trademark application, statement of use, and registration is attached as *Exhibit "B"*.

[9]    A cursory search of LinkedIn demonstrates that NBCUniversal employs hundreds possibly thousands of Texans in various positions across the State. [*See, e.g.,* https://www.linkedin.com/in/andrewayeager; https://www.linkedin.com/in/bobby-myles-4443b46; https://www.linkedin.com/in/olga-aldape-06a78320?trk=public_profile_browsemap; https://www.linkedin.com/in/chad-mitchell-28995228?trk=public_profile_browsemap; https://www.linkedin.com/in/christopherjones89?trk=public_profile_browsemap; https://www.linkedin.com/in/jodypowers1986?trk=public_profile_browsemap; https://www.linkedin.com/in/andy-v-a33614220?trk=public_profile_browsemap; https://www.linkedin.com/in/theal-shadden-7912687a?trk=public_profile_browsemap; https://www.linkedin.com/in/steven-detty-2119461ba?trk=public_profile_browsemap; https://www.linkedin.com/in/zacharyemken?trk=public_profile_browsemap; https://www.linkedin.com/in/christian-suarez-80823691?trk=public_profile_browsemap; https://www.linkedin.com/in/lilizheng?trk=public_profile_browsemap https://www.linkedin.com/in/ryan-simonson-b73a13178?trk=public_profile_browsemap; https://www.linkedin.com/in/dedtric-ray-1386a740?trk=public_profile_browsemap; and https://www.linkedin.com/in/chad-eddings-193925134?trk=public_profile_browsemap.

jurisdiction over NBC, admits that it conducts business by providing products and/or services to individuals in this District and in Texas")].

NBCUniversal's undisputed business contacts with Texas are so numerous, substantial, "continuous and systematic" as to render it essentially at home in Texas. NBCUniversal has an extensive physical presence in Texas.  It conducts business operations from multiple offices throughout the State.  It recruits employees and employs hundreds perhaps thousands of people in Texas.  It has millions of subscribers, viewers and followers in Texas.  These subscribers, viewers and followers are the lifeblood of its $10.8 Billion in cable network revenues in 2020.  NBCUniversal has engaged in substantial business with Texas for many years.  In 2015, it created and registered a mark for use on t-shirts that confirms: "**TEXAS CONNECTS US**".  NBCUniversal is subject to the Court's general jurisdiction. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ("we are required to examine Harvey's contacts *in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process.  The record reveals that Harvey has maintained constant and extensive personal and business connections with Texas throughout his adult life."); *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357, 359 (Tex. 1990) ("where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between defendant's particular act and the cause of action.  In these cases, jurisdiction is often said to be general.  The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state … Schapiro became actively involved in a Texas business and voluntarily continued his commitment for almost two years.  He was investor,

stockholder, director, advisor, lender, and guarantor for Hangers.  He visited the state and maintained regular communications with some of its citizens.  When we consider the degree of his involvement, we regard it difficult to believe that anyone in Schapiro's position could have been surprised by the call to litigation in Texas.  It is clear that he purposefully availed himself of the benefits of this forum.  We hold that Schapiro's minimum contacts with Texas were continuing and systematic enough to subject him to the jurisdiction of a Texas court."); *BASF Plant Science, LP v. Commonwealth Scientific and Industrial Research Organization*, 2019 WL 2017541, at * 3 (E.D. Va. 2019) ("It is difficult to imagine how Cargill could not anticipate being haled into this Court for this dispute. To begin,   Cargill has an extensive presence in this Commonwealth.   It employs 1,800 employees, owns land in Virginia, it is registered to do business here, and maintains business locations throughout the Commonwealth.  Accordingly, the Court is of the opinion that Cargill has purposefully availed itself of Virginia; its laws; and, consequently, its jurisdiction."); *but compare Hall*, 466 U.S. at 418 ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of [general jurisdiction]."); *Frank v. PNK (Lake Charles), LLC*, 947 F.3d 331, 339 (5th Cir. 2020) ("Under the alleged facts and evidence (or lack thereof), Appellants fail to demonstrate PNK's physical presence in Texas.  There is no evidence pointing to PNK's physical operations being located in Texas.  Indeed, it is uncontroverted that PNK does not have employees or registered agents stationed in Texas; a Texas license or permit; offices, gaming facilities or real estate in Texas; nor does it have a bank account or pay taxes in Texas … PNK's Texas contacts begin and end with its marketing activities.  And its physical corporate operations are performed entirely in Louisiana, its domicile.  PNK

is not carrying on any 'part of its general business' in Texas."); *Wilson*, 20 F.3d at 650-651 ("Our examination of Blakey's and Belin's activities in Texas, *in toto,* leads us to the conclusion that their unrelated contacts with Texas were not as 'continuous and systematic' and, in any event, were not as 'substantial' as the nonresident defendant's contacts in *Perkins*.  We simply cannot say that because of these various brief contacts with Texas that either of these defendants should have reasonably expected to be sued in Texas on any matter, however remote from these contacts. They simply were not substantial enough to give rise to such an expectation."); *Natour v. Bank of America, Inc.*, 2021 WL 4505920, at * 3 (E.D. Tex. 2021) (Mazzant, J.) ("Requejo lives and works in Florida.  Requejo has lived in Florida for thirty-nine years.  Requejo votes, pays state taxes, has his driver's licenses, and maintains his family home in Florida.  Plaintiffs admit Requejo may be served with process, in his individual capacity, at an address in Florida.  It is undisputed that Requejo is domiciled in Florida.  Requejo is not "essentially at home" in Texas.  Thus, the Court may not exercise general personal jurisdiction over Requejo.").

### 3.      *NBCUniversal Is Subject to Specific Jurisdiction*

#### a.      *Purposeful Availment*

To establish minimum contacts for both general and specific jurisdiction, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) ("Due process requires purposeful availment because personal jurisdiction 'is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit

there.'") (citations and quotations omitted).  The requirement of purposeful availment has been described as the "constitutional touchstone" of personal jurisdiction. *Burger King Corp.*, 471 U.S. at 474.  It ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. *Id.* at 475.  The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285; *TV Azteca*, 490 S.W.3d at 37-38.

In *TV Azteca*, plaintiff, a Mexican recording artist, filed suit in Texas, alleging that several media defendants defamed her in their broadcasts.  Plaintiff asserted "that she and others viewed the defamatory programs on their televisions in Texas." 490 S.W.2d at 35.  The defendants were TV Azteca, Publimax and Chapoy, anews anchor and producer for TV Azteca.  The jurisdictional facts showed that "TV Azteca is a Mexican national broadcasting company that provides programs to affiliated network-television stations. Publimax operates two such stations in Monterrey, Mexico, which are licensed by the Mexican government.  Publimax pays TV Azteca for the exclusive right to broadcast TV Azteca programs in northeastern Mexico.  Chapoy produces and hosts one of those programs, *Ventaneando*.  Both TV Azteca and Publimax are Mexican corporations, are not registered in Texas or any of the United States, and do not have any offices, employees, agents, or representatives in Texas.  Chapoy is a Mexican citizen and resident, has never been a Texas citizen or resident, does not have an office or agent for service of process in Texas, and has never been a party to a lawsuit in Texas other than this suit." *Id.* at 38.  The plaintiff, Trevino, contended that Texas courts had specific personal jurisdiction over all three defendants "because they purposefully availed

16

themselves of the benefits of conducting activities in Texas when they defamed her in broadcasts that aired in Texas."  The issue on appeal was "whether a television broadcast that originates outside Texas but travels into the state can support personal jurisdiction over the broadcaster in Texas." *Id.* at 35-36.

The Texas Supreme Court ruled that the defendants were subject to specific personal jurisdiction on plaintiff's claims of defamation.   Relying principally on *Keeton*,[10] the Court decided that the defendants had "an intent or purpose to serve the market in the forum State", and were, therefore, subject to specific personal jurisdiction. 490 S.W.2d at 49.  The *TV Azteca* Court concluded that "a defendant who 'intentionally

_____

[10]      In *Keeton,* a New York resident filed a defamation suit in New Hampshire against the publisher of *Hustler* magazine, an Ohio corporation with headquarters in California. 465 U.S. at 772.  The plaintiff apparently filed in New Hampshire because it was the only state where limitations had not run. *Id.* at 773.  Although the defendant's only contacts with New Hampshire consisted of monthly magazine sales there, the Court concluded that the distribution of "some 10,000 to 15,000 copies of *Hustler* magazine in that State each month" could not "by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* at 772, 774.  The Court viewed this as evidence that the defendant "chose to enter the New Hampshire market," *id.* at 779, and found it to be "sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Id.* at 773-774.  Although the plaintiff in *Keeton* had almost no connection with New Hampshire, the Court noted that "the jurisdictional inquiry ... focuses on the relations among the defendant, the forum, and the litigation." *Id.* at 780.  Referencing its decision in *Calder v. Jones*, 465 U.S. 783 (1984), which the Court released on the same day as *Keeton,* the Court explained that the plaintiff's residence "is not ... completely irrelevant" because the "plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." *Id.* (citing *Calder*, 465 U.S. at 788-789)).  "Plaintiff's residence," in other words, "may be the focus of the activities of the defendant out of which the suit arises." *Id.*  "But plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." *Id.*  Noting that "New Hampshire has a significant interest in redressing injuries that actually occur within the State" and that "[t]he tort of libel is generally held to occur wherever the offending material is circulated," *id.* at 776-777, the Supreme Court concluded that, because the defendant had "continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 781.

targets Texas as the marketplace for its products' is subject to specific jurisdiction". *Id.* at 51 (quoting *Spit Star AG v. Kimich*, 310 S.W.3d 868, 871 (2010)).

Here, as in *TV Azteca*, NBCUniversal "made substantial and successful efforts to distribute [its] programs in Texas". 490 S.W.3d at 51.

### b. *Plaintiff's Claims Relate To NBCUniversal's Texas Contacts*

Even if NBCUniversal has sufficient contacts with Texas, the Court can exercise specific jurisdiction over NBCUniversal only if Plaintiff's claim of defamation "arises out of or relates to"[11] NBCUniversal's contacts with Texas. *Daimler*, 571 U.S. at 127 (quoting *Hall*, 466 U.S. at 414 fn. 8)); *Burger King Corp.*, 471 U.S. at 472-473.  In *Ford*, the United States Supreme Court clarified that jurisdiction can exist if the claim merely "relates to" the defendant's contacts, even if it does not "arise from" those contacts. 141 S. Ct. at 1026.

As in *Keeton* and *TV Azteca*, Plaintiff's defamation claim arises out of and relates to NBCUniversal's substantial contacts with Texas, including its broadcast of *The Rachel Maddow Show* to millions of subscribers and followers in Texas on March 18, 2021, which caused injury to Plaintiff's reputation in Texas.

### c. *Exercising Jurisdiction Is Fair and Reasonable*

If the first two elements of the specific jurisdiction analysis are met, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.  To determine whether it is unreasonable "to require [a] corporation to defend" itself in a specific forum, the Court estimates "'the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business."

---

[11]     A claim "relates to" a defendant's forum conduct if it has a "connect[ion] with" that conduct. *International Shoe Company*, 326 U.S. at 319.

*In re Toyota Hybrid Brake Litigation*, 2021 WL 2805455, at * 15 (E.D. Tex. 2021) (Mazzant, J.) (citations and quotation omitted).  In making this determination, the Court balances the following factors: (1) the "burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies." *Wilson*, 20 F.3d at 647 fn. 3 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  If a nonresident has minimum contacts with the forum, "rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *TV Azteca*, 490 S.W.3d at 55 (quoting *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414 S.W.2d 142, 154-155 (Tex. 2013)); *CyrusOne LLC v. Hsieh*, 2021 WL 2936379, at * 3 (E.D. Tex. 2021) (Mazzant, J.) (quoting *McFaddin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown.")).

None of the factors make jurisdiction in Texas constitutionally unfair or unjust. Litigation in Texas will not impose an undue burden on NBCUniversal.  NBCUniversal has more than enough resources to defend litigation in Texas – the very forum in which NBCUniversal chose to engage in continuous and systematic business.  It is beyond dispute that the State of Texas has a significant interest in exercising jurisdiction over those who commit torts (defamation) within its territory. *Compare, e.g., Keeton*, 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State."); *In re Toyota Hybrid Brake Litigation*, 2021 WL 2805455 at * 17 ("Texas has a strong interest in providing a forum for litigation

when 'a product,' … 'allegedly causes economic injury' within the state.") (citation and quotation omitted).

NBCUniversal's motion to dismiss for lack of personal jurisdiction should be denied.

**B.**     ***The Eastern District of Texas Is A Proper Venue***

Whether or not venue is proper depends entirely on whether the Federal District Court in which a case is brought satisfies the requirements of federal venue laws. *Alt. Marine Const. Co. v. U.S. Distr. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Title 28 U.S.C. § 1391 governs the venue in all civil actions brought in District Courts of the United States.  Pursuant to § 1391(b)(1), a civil action may be brought in a judicial district "in which any defendant resides, if all defendants are residents of the State in which the district is located."  Section 1391(b)(2) permits a civil action to be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred".   A case filed in a District that falls within § 1391 "may not be dismissed" under 28 U.S.C. § 1406(a) or Rule 12(b)930. *Alt. Marine Constr. Co.*, 571 U.S. at 56.

Venue is proper under 28 U.S.C. § 1391(b)(1) because NBCUniversal is "subject to the court's personal jurisdiction with respect to the civil action in question". *28 U.S.C. § 1391(c)(2)*; *Faulhaber v. Equifax Information Service, LLC*, 2021 WL 5140791, at * 3 (E.D. Tex. 2021) (Mazzant, J.) ("Because the defendants are subject to personal jurisdiction in the Eastern District of Texas, they are deemed to reside here.  Thus, venue is proper. Further, because venue is proper, the Court is not compelled to dismiss under § 1496.") (citation omitted).

Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim of defamation occurred in Texas.  The language of § 1391(b)(2) contemplates that in some cases venue will lie in two or more districts. The plaintiff is not required to select the venue with "the <u>most</u> substantial nexus to the dispute"; rather, he must simply choose a venue where a substantial part of the events giving rise to the claim occurred.

Defamation occurs wherever the allegedly defamatory statements are published. *Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1311 (11th Cir. 1990).  In the context of online defamation cases, District Courts have routinely held that venue under § 1391(b)(2) is proper where the defamatory statements were published ***and*** in the district where harm was felt. *See, e.g., Hawbecker v. Hall*, 88 F.Supp.3d 723, 731 (W.D. Tex. 2015) ("In a defamation case, the Court may consider the venue of where the defamation occurred and the venue of where the harm was felt to determine the location of "a substantial part of the events" under 1391(b)(2) … The Complaint alleges injury to Hawbecker's reputation in the San Antonio Division of the Western District of Texas. Therefore a substantial part of the events giving rise to his claim is the injury to his reputation in San Antonio, Texas.") (citing *Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group*, 923 F.Supp. 950, 958 (S.D. Tex. 1996) (finding venue was proper in the Southern District of Texas when a California defendant sent an allegedly defamatory letter to Texas)); *id. Eakin v. Rosen*, 2015 WL 8757062, at * 6 (S.D. Ga. 2015) (venue may lie in a district in which the plaintiff does not reside if the plaintiff has suffered economic or reputational injury in the district and publication has occurred in the district); *Santa's Best Craft, LLC v. Janning*, 2003 WL 21504522, at * 2 (N.D. Ill.

2003) (finding that "a substantial part of the events" giving rise to the plaintiff's defamation claim occurred in the district "where the allegedly defamatory statement [was] published" and where "the injury (if any) from the defamation was incurred"); *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.*, 2008 WL 4058014, at * 3 (M.D. Fla. 2008) ("Capital Corp. alleges that the website was accessed in this District, that it suffered harm to its reputation in this District, and that it suffered an economic injury in this District.  As a result, the allegations are sufficient to establish venue under section 1391(b)(2)."); *DaimlerChrysler Corp. v. Askinazi*, 2000 WL 822449, at * 6 (E.D. Pa. 2000) ("In defamation cases … courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district.").

Plaintiff alleges that NBCUniversal published the false and defamatory statements in this District and that Plaintiff suffered substantial damage to his reputation here. Venue is clearly proper under § 1391(b)(2).

C.    ***The Court Should Deny Defendant's Request To Transfer***

Title 28 U.S.C. § 1404(a) provides that for the "convenience of the parties and witnesses" and "in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought."  Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary

inconvenience and expense ...'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).[12]  If that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, and (5) plaintiff's choice of forum.  The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 fn. 6 (1981); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

---

[12]    It is by no means clear that Plaintiff could have brought this action in the United States District Court for the Eastern District of California.  Although *Plaintiff* resides in Tulare County, California, within the Eastern District of California, NBCUniversal is headquartered in Universal City, California, within the Central District of California (Los Angeles Division).  NBCUniversal's operation of theme parks and studios in Universal City has nothing to do with this case.

The party seeking transfer of venue must show good cause for the transfer.  To this end, the moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*.  When the transferee venue is ***not*** clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. *Id.*; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

1.  ***Private Interest Analysis***

a.  ***Ease of Access ro Sources of Proof***

Plaintiff's sources of proof, including documents and physical evidence, are located in Texas, Arkansas, Virginia and Washington, D.C. [*Compl.,* ¶¶ *12, 13, 14*]. Defendant's sources of proof are all located (apparently) in New York.  Rachel Maddow, host of *The Rachel Maddow Show*, is a citizen of New York and/or Massachusetts. [*Compl.* ¶ *8* (citing https://www.msnbc.com/rachel-maddow-show/rachel-maddow-biography-n1157621 (Rachel Maddow "lives in New York City and Massachusetts with her partner")].  The executive producer of *The Rachel Maddow Show* resides in New York.  *The Rachel Maddow Show* is produced from NBCUniversal's facilities in New York. [*ECF No. 5-2*].  The March 18, 2021 segment of *The Rachel Maddow Show* and the republication via the @MaddowBlog were broadcast and published to subscribers, viewers and followers in Texas.

Despite its continued relevance, ease of access to sources of proof "has become less significant in a transfer analysis because of the advances in copying technology and information storage." *Faulhaber*, 2021 WL 5140791 at * 4 (quoting *Abatix Corp. v.*

*Capra*, 2008 WL 4427285, at * 7 (E.D. Tex. 2008)).  NBCUniversal fails to establish that document transport would be a "major undertaking" to the Eastern District of Texas. Because there is no impediment concerning the ease of access to documents and physical evidence, this factor, at best, favors keeping the case in this Court. *See LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D. Tex. 1998) ("The Court finds little inconvenience inherent in bringing, if necessary, those records to Galveston … Moreover, the Court finds dubious any contention that the amount of records requiring transfer to Galveston for the trial of this case is prohibitive; therefore, it places little weight in this factor under the present facts.").

### b. *Compulsory Process and Convenience of the Witnesses*

At this stage of the proceeding, it appears that ***none*** of the identifiable witnesses, especially the non-party witnesses including (a) those familiar with the House Intelligence Committee practices and protocols, (b) members of Plaintiff's staff in Washington, D.C., (d) the Office of the Attorney General in Washington, D.C., and (e) persons with knowledge of the falsity of NBCUniversal's statements,[13] are located in California.

A Court's subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial or would not incur substantial expense." Fed.R.Civ. P. 45(c)(1).  NBCUniversal has the burden to establish that the Eastern District of California

---

[13]     One of Plaintiff's witnesses is Congressman Rick Crawford.  He has offices in Washington, D.C., Cabot, Arkansas, and Mountain View, Arkansas. [https://crawford.house.gov/contact/officeinformation.htm].

has subpoena power over more unwilling witnesses than this Court.  In its motion, p. 33, NBCUniversal identifies "seven third-party witnesses", only one of whom, Adam Schiff, has any connection with California.[14]  Importantly, all known non-party witnesses will be substantially more inconvenienced by having to travel to California versus Texas for trial. The Fifth Circuit applies the "100-mile" rule to determine the burden a venue places on witnesses who participate in the case.  If "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 371 F.3d at 204.  The Sherman Division of the Eastern District of Texas is 1,411 miles from the Western Division (Los Angeles) of the Central District of California.  Thus, the 100-mile rule applies.[15]  "The convenience of witnesses is probably the single most important factor in transfer analysis." *Faulhaber*, 2021 WL 5140791 at * 5.  This factor weighs heavily against transfer.

### c.    *Cost of Trial*

Since there are witnesses located in the District of Columbia, Virginia, Arkansas and New York, there is no reason to believe that a trial either here or in California will be less expensive.  NBCUniversal has not given the Court any reason to think otherwise, and this factor does not weigh for or against transfer.

---

[14]    In its motion, pp. 24 and 25, NBCUniversal represents that "Plank and Langer have ties to California."  This is untrue and disputed.  They have no ties to California.  They work for Plaintiff in Washington, D.C.

[15]    The distance between NBCUniversal's headquarters in New York City and the Sherman Division is 1,531 miles.  The distance from NBCUniversal headquarters and the Federal Courthouse in Los Angeles is 2,791 miles.

### d. *Other Factors, Including Plaintiff's Choice of Forum*

Here, there is no evidence that litigating this case in the Eastern District of Texas would "unnecessarily wast[e] judicial resources." *ColorQuick, LLC v. Vistaprint Ltd.*, 2010 WL 5136050, at * 8 (E.D. Tex. 2010).  Further, there is no evidence that transfer of this case to the Eastern or Central District of California would make trial easier, more expeditious and/or less expensive. *See Volkswagen*, 545 F.3d at 315.

Plaintiff's choice of forum is entitled to great deference.  No factor weighs heavily in favor of transfer.  Accordingly, Plaintiff's choice of forum must be respected.

### 2. *Public Interest Factors*

Consideration of the public interest factors also demonstrates that NBCUniversal's motion to transfer venue should be denied.

### a. *Court Congestion*

Courts in California are significantly clogged.  For the 12-month period ending on June 30, 2021, the total number of cases pending in the Eastern District of Texas was 5,581 and the median time from filing to trial in civil cases in the Eastern District of Texas was 20.4 months.  For the same 12-month period, there were 7,949 cases pending in the Eastern District of California.  The median time from filing to trial in the Eastern District of California has not been reported since June 30, 2020.  As of June 30, 2020, the mean time from filing to trial in the Eastern District of California was 31.2 months – almost three (3) years.[16]  Trial will definitely not be speedier in California.  Aside from the eleven-plus month difference, on November 2, 2021, the Court entered an Order Governing Proceedings [*ECF No. 7*], setting dates for this case and a Rule 16

---

[16]      https://www.uscourts.gov/report-name/federal-court-management-statistics, accessed on November 12, 2021

management conference for January 4, 2022.  This public interest factor weighs greatly in favor of keeping the case in the Eastern District of Texas.

**b.**    ***Local Interest***

As stated above, Texas has a substantial interest in protecting both Plaintiff, who was injured here through the publication of defamatory statements, *and* the Texas subscribers, readers and followers of NBCUniversal who were deceived by the broadcast.

As in *Keeton*, this factor weighs heavily against transferring the case.

**c.**    ***Familiarity with the Law***

A Federal Court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply. *See, e.g., Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-497 (1941).  Where there is a conflict and no governing choice-of-law agreement, Texas applies the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *See Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016).  If there is a conflict, it is likely that District of Columbia or New York law may be applicable in this case. *See Nunes v. Washington Post*, 2021 WL 3550896, at * 8 (D. D.C. 2021) ("The Court thus concludes that Nunes's injuries—at least as alleged in the Complaint—are primarily suffered in the District of Columbia. That is where he alleges he meets and interacts with other public officials, was considered for appointed positions, received numerous threats, and performs the majority of his duties as Ranking Member of the House Intelligence Committee.  It also happens to be where much of the Post's readership resides, where the Post is headquartered, and where the events underlying the article occurred.  As a result, based on Nunes's

allegations, D.C. law applies to his defamation claim.").  Texas law will certainly govern all procedural issues.

The Court is well-equipped to and can apply District of Columbia or New York as well as any California Court.  This factor is, at best, neutral.

### d.    *Avoidance of Problems With Conflicts of Law or Foreign Law*

There is no evidence that any foreign law may be applicable to this matter.  Since California also follows the "most significant relationship" test, transfer to the Eastern District of California will not avoid any problem with conflicts of law.  This factor does not weigh in favor of transferring.

In sum, NBCUniversal has failed to show good cause for transfer. *TIG Ins. Co. v. NAFCO Ins. Co.*, 177 F.Supp.2d 561, 568 (N.D. Tex. 2001) (stating a court should not transfer a case where the only practical effect is to shift the inconvenience of one party to the other).

### CONCLUSION

For the reasons stated above and the hearing of this matter, Plaintiff respectfully requests the Court to deny Defendant's motions.


DATED:        November 12, 2021


Signature of Counsel on Next Page

DEVIN G. NUNES

By:_____*/s/ Madhu S. Sekharan*_____
   Madhu S. Sekharan, Esquire
   Texas Bar No. 24072332
   16614 Radiant Lilac Trail
   Cypress, TX 77433-6365
   Mobile:  832-920-1515
   Office:  281-304-6369
   MSekharanAttorney@outlook.com

   Steven S. Biss (VSB # 32972)
   300 West Main Street, Suite 102
   Charlottesville, Virginia 22903
   Telephone:   (804) 501-8272
   Facsimile:   (202) 318-4098
   Email:   stevenbiss@earthlink.net
   (*Motion for Admission Pro Hac Vice*
    *To be Filed*)

   *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021 a copy of the foregoing was served electronically in PDF upon counsel for NBCUinversal.

By:_____*/s/ Madhu S. Sekharan*_____
      Madhu S. Sekharan, Esquire
      Texas Bar No. 24072332
      16614 Radiant Lilac Trail
      Cypress, TX 77433-6365
      Mobile:  832-920-1515
      Office:  281-304-6369
      MSekharanAttorney@outlook.com

      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:   (804) 501-8272
      Facsimile:   (202) 318-4098
      Email:   stevenbiss@earthlink.net
      (*Motion for Admission Pro Hac Vice*
         *To be Filed*)

      *Counsel for the Plaintiff*