IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
Sherman Division

| | |
|---|---|
| DEVIN G. NUNES | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21-cv-00608-ALM |
| | ) |
| | ) |
| NBCUNIVERSAL MEDIA, LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |

# PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Plaintiff, Devin G. Nunes ("Plaintiff"), by counsel, pursuant to Local Rule 7(f), respectfully submits this Sur-Reply responding to issues raised in Defendant, NBCUniversal Media, LLC's ("NBCUniversal") reply [*ECF No. 14*] to Plaintiff's Memorandum in Opposition to NBCUniversal's motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer.

## I. INTRODUCTION

This defamation action arises from NBCUniversal's broadcast of false and defamatory statements about Plaintiff to cable television subscribers and viewers in Texas *and* NBCUniversal's republication of the actionable statements to millions more in Texas via various social media properties. **NBCUniversal does not challenge a single jurisdictional fact in the Complaint**. It concedes that it "owns property and transacts substantial business in Texas"; that it "maintains corporate and retail offices and agents throughout Texas, including in Austin, Dallas, Dallas-Fort Worth, El Paso, Houston,

1

McAllen and San Antonio"; that its cable news networks, including "MSNBC", reach "millions in Texas"; that MSNBC has "hundreds of thousands" of social media followers in Texas; that Plaintiff has a significant following and support in Texas (contributors,[1] 100,000+/- subscribers to direct communications, and social media followers in excess of 200,000); and that Plaintiff suffered substantial harm to his reputation in Texas when viewers in Texas watched the March 18, 2021 segment of *The Rachel Maddow Show*.

Plaintiff's Memorandum in Opposition [*ECF No. 9 ("Pl. Mem.")*] highlighted additional jurisdictional facts gathered from the public record, including statements and information published by NBCUniversal itself, **none of which was (or could be) disputed by NBCUniversal**. For instance:

- NBCUniversal owns and operates NBC Owned Television Stations in major markets, Dallas-Fort Worth and Houston. [*Pl. Mem., p. 10*].[2]

- NBCUniversal actively recruits Texans for employment at its various locations in Texas. [https://www.nbcunicareers.com/all-locations]. NBCUniversal is hiring for communications and public relations, content development and programming, digital media, editorial, marketing, production, sales, technology and engineering positions in Texas. [*See, e.g.,* https://www.linkedin.com/jobs/view/morning-producer-

---

[1] In 2019/2020, when Plaintiff ran for re-election, he received donations to his campaign from 10,484 Texans, which evidences a significant connection with Texas. [https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00370056&two_year_transaction_period=2020&contributor_state=TX&is_individual=true].

[2] In its unverified reply, footnote 5, NBCUniversal denies that it owns and operates "NBC broadcast stations" in Galveston, Brinson, Treakle, Amarillo, San Antonio, Rio Grande or El Paso. In spite of NBCUniversal's unverified denial, the public record suggests that NBCUniversal does, in fact, own and operate other television stations in Texas. [*See, e.g.,* https://www.nbcdfw.com/news/local/nbc-universal-owned-television-stations-in-texas-win-big-at-lone-star-emmy-awards-and-bring-home-51-awards/79896/; https://www.produ.com/noticias/eng/nbcuniversal-owned-television-stations-acquire-ktlm-tv-in-rio-grande-city-texas].

nbc-5-dallas-at-nbcuniversal-2790375520; https://www.linkedin.com/jobs/view/news-producer-tlmd-mcallen-at-nbcuniversal-2768940510]. [*Pl. Mem., p. 11 fn. 7*].

● Based upon publicly available statements, Plaintiff forecasts – and NBCUniversal does not deny – that NBCUniversal's revenues from ongoing Texas-based operations are massive. [*Pl. Mem., p. 11*].

● In 2015, NBCUniversal filed an application with the USPTO to trademark the phrase "**TEXAS CONNECTS US**". [*Pl. Mem., pp. 11-12*].

● NBCUniversal employs hundreds possibly thousands of Texans in various positions across the State. [*Pl. Mem., p. 12 fn. 9*].

● Significantly, in other litigation in this Court, NBCUniversal has admitted that it is subject to personal jurisdiction. [*Pl. Mem., pp. 12-13*].[3]

This case is like *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-777 (1984) ("[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated"), except that in this case the defamatory statements were intentionally broadcast to millions of cable television subscribers and followers in Texas, whereas in *Keeton* personal jurisdiction and venue was upheld by the United States Supreme Court based on the sale of 10,000 to 15,000 copies of a magazine in New Hampshire.[4]

---

[3] Contrary to footnote 7 of the reply, Plaintiff does not contend that NBCUniversal "waived personal jurisdiction in this case" by not challenging it in another case. The point is that NBCUniversal is playing fast and loose with the Court. It should not be permitted to approbate and reprobate with regard to personal jurisdiction in Texas.

[4] In its reply, p. 2, NBCUniversal argues that Plaintiff filed a "conclusory and vague Complaint", but, tellingly, NBCUniversal failed to file a motion to dismiss pursuant to Rule 12(b)(6) or a motion for a more definite statement pursuant to Rule 12(e).

## II. JURISDICTIONAL DISCOVERY

The two declarations submitted by NBCUniversal in support of its motion dismiss or transfer [*ECF Nos. 5-1 and 502*] are noteworthy because they are virtually devoid of jurisdictional denials. This speaks volumes. In most of the reported decisions addressing general jurisdiction, the defendant expressly denied that it has offices, denied that it has agents, denied that it pays taxes, denied that it has bank accounts, denied that it has a continuous presence, etc., in Texas. Not so here.[5] In its motion and reply, NBCUniversal barely addresses its substantial Texas-based presence.

By comparison, in support of its motion to dismiss for lack of personal jurisdiction and to transfer venue in *Asevedo v. NBCUniversal Media, LLC*, 921 F.Supp.2d 573 (E.D. La. 2013), NBCUniversal submitted a declaration of litigation counsel, who very clearly and specifically stated, in relevant part, as follows:

    1.    NBCUniversal "regularly employs two people located in Louisiana, both of whom work from home offices."

    2.    In 2012, NBCUniversal "employed approximately 50 people in Louisiana who were 'daily hires,' the majority of whom worked from home or in connection with a temporary production, such as a local sporting event."

    3.    NBCUniversal does not "own[] any real estate or other property in Louisiana."

---

[5] The only conclusion that can be drawn in this case from NBCUniversal's silence concerning jurisdictional facts such as the ownership of real estate and property, the presence of agents and employees, the existence of bank accounts and the payment of taxes, is that NBCUniversal transacts continuous, systematic and substantial business in Texas such that it is essentially at home in Texas.

    4.    NBCUniversal "owns seven subsidiary companies that are incorporated in Louisiana, but none of those subsidiaries maintains a principal place of business in Louisiana."

    5.    NBCUniversal does not "directly maintains any accounts with financial institutions in Louisiana."

    6.    NBCUniversal does not "pay[] taxes of any kind to Louisiana or its political subdivisions."

921 F.Supp.2d at 588-589. In response to the declaration, the plaintiff in *Asevedo* pointed out that NBCUniversal "hired numerous employees in Louisiana, produced television programs and films in Louisiana, broadcast programming into Louisiana on television and the internet, maintain affiliates incorporated in Louisiana, sell merchandise in Louisiana, and may own or lease property in Louisiana. Asevedo contends that the relevant jurisdictional facts are in defendants' possession and that he should be afforded an opportunity to discovery whether these contacts amount to those necessary to establish general jurisdiction over NBCUniversal". The District Court agreed. "Because Asevedo has suggested with reasonable particularity the possible existence of facts giving rise to general jurisdiction, the Court will defer ruling on the general jurisdiction inquiry pending the completion of discovery." 921 F.Supp.2d at 589.

As in *Asevedo*, the Court in this case should at the very least defer ruling on the general jurisdictional inquiry pending completion of discovery.

### III. <u>NBCUNIVERSAL IS SUBJECT TO PERSONAL JURISDICTION</u>

NBCUniversal's presence in Texas presents a far more compelling case for general jurisdiction than in *Asevedo*. NBCUniversal's undisputed business contacts with

5

Texas are so numerous, substantial, "continuous and systematic" as to render it essentially at home in Texas. A review of NBCUniversal's contacts *in toto*[6] demonstrates that they constitute the kind of continuous and systematic contacts required to satisfy due process. NBCUniversal is subject to the Court's general jurisdiction. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) ("The record reveals that Harvey has maintained constant and extensive personal and business connections with Texas throughout his adult life."); *Epstein v. Gray Television, Inc.*, 2007 WL 295632, at *3 (W.D. Tex. 2007) (district court would have general jurisdiction over defendants who owned a broadcast station in the transferee court); *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357, 359 (Tex. 1990) ("Schapiro became actively involved in a Texas business and voluntarily continued his commitment for almost two years. He was investor, stockholder, director, advisor, lender, and guarantor for Hangers. He visited the state and maintained regular communications with some of its citizens. When we consider the degree of his involvement, we regard it difficult to believe that anyone in Schapiro's position could have been surprised by the call to litigation in Texas. It is clear that he purposefully availed himself of the benefits of this forum. We hold that Schapiro's minimum contacts with Texas were continuing and systematic enough to subject him to the jurisdiction of a Texas court."). Unlike the defendants in *Wilson*, 20 F.3d at 650-651, NBCUniversal's activities in Texas are "continuous", "systematic" and "substantial".

---

[6] In its reply, NBCUniversal chooses to isolate each of its individual minimum contact with Texas, rather than consider the contacts *in toto*. The proper approach is to consider a defendant's contacts *in toto*. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) ("General jurisdiction can be assessed by evaluating contacts of defendants with the forum over a reasonable number of years, up to the date the suit was filed … Such contacts "must be reviewed in toto, and not in isolation from one another.") (citing and quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)).

NBCUniversal's contacts are not the kind of "brief contacts with Texas" that the *Wilson* Court found insufficient to confer general jurisdiction.[7]

In addition to its many other contacts with the State of Texas, NBCUniversal delivers breaking news and information across its interactive website, www.msnbc.com. [*Compl.*, ¶ 8]. NBCUniversal's operation of an active website further demonstrates that it purposefully avails itself of the privilege of doing business in Texas and that the exercise of personal jurisdiction is proper. In *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999), the Fifth Circuit adopted the test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997) to determine when a defendant's internet activity subjects it to personal jurisdiction in the forum. The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where, as here, a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet". *Zippo*, 952 F.Supp. at 1124. The *Mink* Court held that in this situation, "personal jurisdiction is proper." 190 F.3d at 336. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on

---

[7] *Butowsky v. Gottlieb* is also inapposite. It is not a general jurisdiction case. The "national media corporation" in *Butowsky* was Vox Media, whose limited presence in Texas is incomparable to NBCUniversal's. The plaintiff argued that Vox was subject to specific jurisdiction in Texas because "it has 'adequate circulation' and an office with nineteen employees in Texas". The Magistrate Judge found that Vox was not subject to specific jurisdiction solely because it posted an article that was accessible online. This Court approved the Magistrate's report and recommendation. 2020 WL 5757223, at * 1-3 (E.D. Tex. 2020) (Mazzant, J.). In this case, by contrast, NBCUniversal not only published defamatory content on its website, www.msnbc.com, but it specifically targeted and purposely exploited the Texas market by selling its cable television programs, including *The Rachel Maddow Show*, to subscribers and consumers in Texas.

7

the Internet. "With passive websites, personal jurisdiction is not appropriate." *Id.* In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.*

NBCUniversal operates an active website. It sells LIVE-TV programming and products, including episodes of *The Rachel Maddow Show*. The website contains the "MSNBC Store" in which NBCUniversal sells a variety of merchandise. The website advertises the sale of books written by its hosts, including Rachel Maddow. The website permits users to send news tips to Rachel Maddow and to sign up for a weekday newsletter. [https://www.msnbc.com/rachel-maddow-show]. Additionally, the website offers career opportunities and placement in Texas, https://www.nbcunicareers.com/all-locations, and heavily promotes advertising, partnerships and branded content opportunities. [https://www.msnbc.com/advertising-and-partnerships/].

NBCUniversal's active and sustained internet activity, in addition to its other admitted contacts, clearly demonstrates that it is subject to personal jurisdiction in Texas.[8]

---

[8] Although NBCUniversal suggests that the Complaint does not plead "specific jurisdiction", paragraph 11 of the Complaint expressly states that "MSBNC is subject to personal jurisdiction in Texas. The Statements were intentionally broadcast and republished throughout Texas, including in the Eastern District, where Plaintiff suffered substantial injury." Viewed in the light most favorable to Plaintiff, the Complaint alleges that NBCUniversal is subject to both general and specific jurisdiction in Texas.

## IV. THERE IS NO GOOD CAUSE FOR TRANSFER

The defamation at issue in this case was published in New York, by a citizen of New York or Massachusetts (Rachel Maddow), during an episode of *The Rachel Maddow Show*, which is produced and broadcast from facilities in New York to cable subscribers in Texas and elsewhere. Plaintiff chose to file this action in Texas where he has a significant following and where, like the plaintiff in *Keeton*, he suffered substantial injury to his reputation. The sources of proof are, at best for NBCUniversal, split between New York, Virginia and the District of Columbia.[9] The anticipated non-party witnesses are located in the District of Columbia,[10] Virginia, and Arkansas. NBCUniversal identifies a lone potential witness from California, Adam Schiff.[11] In its reply, p. 12, NBCUniversal suggests that California is "closer to much of the witnesses and evidence", but this is plainly wrong, as is NBCUniversal's claim that California law "governs the case". *See Nunes v. Washington Post*, 2021 WL 3550896, at * 8 (D. D.C. 2021) ("The Court thus concludes that Nunes's injuries—at least as alleged in the Complaint—are primarily suffered in the District of Columbia. That is where he alleges he meets and interacts with other public officials, was considered for appointed positions,

---

[9] The Intelligence Community Assessment referred to by Rachel Maddow during the March 18, 2021 segment of *The Rachel Maddow Show* [*see ECF No. 5-3, p. 3 of 8*], a copy of which is attached as *Exhibit "A"*, was authored by the National Intelligence Council under the auspices of the National Intelligence Officer for Cyber in Arlington, Virginia.

[10] In its reply, footnote 13, NBCUniversal again represents that Plaintiff's chief of staff, Jillian Plank, and communications director, Jack Langer, "have ties to California. **They do not. They live and work in Washington, D.C. and Virginia**.

[11] Mr. Schiff has an office in Washington D.C. from which he conducts business as a United States Congressman and Chairman of the House Intelligence Committee. [https://schiff.house.gov/contact].

received numerous threats, and performs the majority of his duties as Ranking Member of the House Intelligence Committee. It also happens to be where much of the Post's readership resides, where the Post is headquartered, and where the events underlying the article occurred. As a result, based on Nunes's allegations, D.C. law applies to his defamation claim.").[12] NBCUniversal agrees that the administrative difficulties from Court congestion in California weighs in favor of retaining this case. Finally, in its reply, p. 14, NBCUniversal asserts that "Nunes cites no authority for the proposition that a state has an interest in a defamation case involving a national publication when no parties reside in the state and the statements had no connection to the state. But Plaintiff cites

---

[12] The Court should question why NBCUniversal has not requested a transfer to the Southern District of New York. The answer is simple. NBCUniversal is shopping for a forum where it can file an anti-SLAPP motion, and the Second Circuit Court of Appeals recently held that anti-SLAPP statutes, such as Caliornia's, directly collide with the Federal Rules of Civil Procedure, and, therefore, do not apply in diversity cases. *La Liberte v. Reid*, 966 F.3d 79, 86 (2nd Cir. 2020); *see id., Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Because the Texas anti-SLAPP statute's "burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court"); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018) ("Rules 8, 12 and 56 create an affirmative entitlement to avoid pretrial dismissal that would be nullified by the Georgia anti-SLAPP statute if it were applied in a federal court"); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 673 (10th Cir. 2018) ("The proper course is to recognize the New Mexico anti-SLAPP statute as a procedural mechanism for vindicating existing rights and nothing more. Accordingly, the decision of the district court denying application of the New Mexico anti-SLAPP statute in this federal diversity action is AFFIRMED"), *cert. denied sub nom. AmeriCulture, Inc. v. Los Lobos Renewable Power, LLC*, 139 S.Ct. 591,202 (2018) (holding that the New Mexico anti-SLAPP statute "simply does not define the scope of any state substantive right or remedy … the statute is procedural in all its aspects"); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1334-1337 (D.C. Cir. 2015) (a federal court sitting in diversity must apply Federal Rules of Civil Procedure 12 and 56 rather than D.C.'s Anti-SLAPP law) (Kavanagh, J.); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kosinski. J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof"). NBCUniversal's motive in seeking transfer clearly has nothing to do with the convenience of the parties and witnesses.

*Keeton* and that is precisely what *Keeton* says. *Keeton*, 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").

NBCUniversal has failed to show good cause for transfer. To this end, the transferee venue – the Eastern District of California – is not "clearly more convenient" than this Court. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *Stingray Music USA, Inc. v. Music Choice*, 2017 WL 1022741, at * 3-4 (E.D. Tex. 2017); *Francis v. Api Technical Services, LLC*, 2014 WL 11462447, at * 8-10 (E.D. Tex. 2014) (Mazzant, M.J.).

## **CONCLUSION**

For the reasons stated above and the hearing of this matter, Plaintiff respectfully requests the Court to deny NBCUniversal's motions.

DATED: November 28, 2021

Signature of Counsel on Next Page

11

DEVIN G. NUNES

By: <u>*/s/ Madhu S. Sekharan*</u>
Madhu S. Sekharan, Esquire
Texas Bar No. 24072332
16614 Radiant Lilac Trail
Cypress, TX 77433-6365
Mobile: 832-920-1515
Office: 281-304-6369
MSekharanAttorney@outlook.com

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net
(*Motion for Admission Pro Hac Vice
To be Filed*)

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2021 a copy of the foregoing was served electronically in PDF upon counsel for NBCUinversal.

        By: */s/ Madhu S. Sekharan*
            Madhu S. Sekharan, Esquire
            Texas Bar No. 24072332
            16614 Radiant Lilac Trail
            Cypress, TX 77433-6365
            Mobile:  832-920-1515
            Office:  281-304-6369
            MSekharanAttorney@outlook.com

            Steven S. Biss (VSB # 32972)
            300 West Main Street, Suite 102
            Charlottesville, Virginia 22903
            Telephone:  (804) 501-8272
            Facsimile:  (202) 318-4098
            Email:  stevenbiss@earthlink.net
            (*Motion for Admission Pro Hac Vice*
                  *To be Filed)*

            *Counsel for the Plaintiff*