# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DEVIN G. NUNES, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:21-CV-00608 |
| v. | § | Judge Mazzant |
| | § | |
| NBCUNIVERSAL MEDIA, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 28 U.S.C. § 1406(a), or, in the Alternative, Motion to Transfer Venue to the U.S. District Court for the Eastern District of California Under 28 U.S.C. § 1404(a) or § 1406(a) (Dkt. #5), and Plaintiff's Motion to Permit Jurisdictional Discovery and to Adjust Deadlines (Dkt. #8). Having considered the motions and the relevant pleadings, the Court finds that Defendant's motion (Dkt. #5) should be **GRANTED in part** and **DENIED in part**, and that Plaintiff's motion (Dkt. #8) should be **DENIED**.

## BACKGROUND

This case arises from a news segment published by Defendant NBCUniversal Media, LLC, ("NBCU") concerning Plaintiff Devin G. Nunes' ("Nunes") purported involvement with Russian operatives. Nunes is a California resident who served as the U.S. Representative for California's 22nd Congressional District from 2003 to 2021. From 2015 to 2019, he acted as the Charmain of the House Permanent Select Committee on Intelligence, and became the Ranking Member on the Committee in 2019. Nunes announced his resignation from Congress on December 6, 2021.

MSNBC is an American news-based television network owned by NBCU. From its headquarters in New York City, MSNBC broadcasts to millions of households worldwide through its television programs, website, and social media. As part of its weeknight programming, MSNBC airs *The Rachel Maddow Show* in which television host Rachel Maddow ("Maddow") provides news coverage as well as her own reporting and political commentary on current events.

On March 18, 2021, the Office of the Director of National Intelligence released a document about Russia's interference in the 2020 presidential election. Later that day, during a segment of *The Rachel Maddow Show* entitled "More Than the Usual Mess," Maddow discussed the government's findings, stating:

> In the report from the Director of National Intelligence, about Russia interfering in the election in 2020, one of the named agents in that report described by the Director of National Intelligence as having carried out the Kremlins' attack on our election this year is a man named Andriy Derkach. The report names him. It says he was under the purview of Russian President Vladimir Putin for the purpose of this operation; targeting the election to try to hurt Biden and help Trump. . . .
>
> . . . last summer, Democrats on the Intelligence Committee in the House learned that that same guy, Derkach, had mailed a stack of unknown materials to a Republican Congressman named Devin Nunes, who's the top Republican on the Intelligence Committee to this day.
>
> . . . Congressman Nunes accepted a package from him. What was in it? Congressman Nunes has refused to answer questions about what he received from Andriy Derkach.
>
> He has refused to show the contents of the package to other members of the Intelligence Committee; he has refused to hand it over to the FBI, which is what you should do if you get something from somebody who is sanctioned by the US Government as a Russian agent. Still, the Republicans have kept Mr. Nunes on as the top Republican on the Intelligence Committee. How does that stand? How does that stay a thing?

(Dkt. #5, Exhibit C at pp. 2–3) (cleaned up) (the "Report"). The Report was originally broadcast on MSNBC's cable network, and subsequently published online to both MSNBC's YouTube channel and Maddow's Twitter account (Dkt. #1 ¶ 4).

On August 3, 2021, Nunes filed suit in the undersigned Court, alleging that several of the statements made during the Report were false and defamatory (Dkt. #1). Specifically, Nunes contends the Report substantially harmed his reputation with his "significant following and support in Texas" composed of "contributors, 100,000+/- subscribers to direct communications, and social media followers in excess of 200,000" (Dkt. #1 ¶ 7). On October 28, 2021, NBCU filed its Motion to Dismiss (Dkt. #5). On November 12, 2021, Nunes filed a response (Dkt. #9). On November 22, 2021, NBCU filed a reply (Dkt. #14). On November 28, 2021, Nunes filed a sur-reply (Dkt. #16).

On November 3, 2021, Nunes filed a Motion to Permit Jurisdictional Discovery (Dkt. #8) on the personal jurisdiction and venue issues raised in NBCU's Motion to Dismiss (Dkt. #5). On November 17, 2021, NBCU filed a response (Dkt. #11).

## LEGAL STANDARD

When considering a motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)).

## ANALYSIS

### I.    Personal Jurisdiction

NBCU asks this Court to dismiss Nunes' claims under Federal Rule of Civil Procedure 12(b)(2). This rule requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a

motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)). To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court must establish whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

It is undisputed that the Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Nunes contends that NBCU has established sufficient minimum contacts in Texas because

4

NBCU "owns property" and "maintains corporate and retail offices and agents throughout Texas" and "[t]he Statements were intentionally broadcast and republished throughout Texas" (Dkt. #1 ¶¶ 8, 11). Accordingly, Nunes alleges this Court has both general and specific jurisdiction over NBCU. NBCU argues that this Court has neither general nor specific jurisdiction for two reasons: (1) NBCU's contacts with Texas do not make it "at home" here, and (2) "Texas is not the focus of the Report or the alleged harm suffered" (Dkt. #5 at pp. 19, 20). Nunes responds in opposition to each of NBCU's points (*see* Dkt. #9). The Court will begin by examining whether it has general jurisdiction over NBCU.

### A.  General Jurisdiction

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Except in "exceptional cases," a corporation is "at home" only in its state of incorporation and in the state of its principal place of business. *Daimler*, 571 U.S. at 137. Because a corporation that operates in many states or countries can scarcely be deemed at home in all of them, "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (citing *Daimler*, 571 U.S. at 139 n. 20).

Here, NBCU is a limited liability company organized under Delaware law with its principal

place of business in New York[1] (Dkt. #1 ¶ 8; Dkt. #5 at p. 24). Consequently, Texas is not a forum in which this Court may exercise general jurisdiction over NBCU unless the Court finds this dispute is an "exceptional" one. *See BNSF Ry. Co. v. Tyrell*, 137 S.Ct. 1549 (2017). It is not.

Courts have noted the difficulty a plaintiff faces in establishing general jurisdiction under the "exceptional case" doctrine. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."). In *BNSF Railway Company v. Tyrell*, the Supreme Court discussed *Perkins*, the paradigmatic "exceptional case." 137 S.Ct. at 1549 (citing *Perkins v. Benguet Consol. Mining Co*., 342 U.S. 437 (1952)). In *Perkins*, wartime activities temporarily forced relocation of a foreign corporation's headquarters to Ohio. The Supreme Court explained that because Ohio was "the center of the corporation's wartime activities," it became "a surrogate for the [corporation's] place of incorporation or head office." *Id.* at 1558. Accordingly, Ohio could properly exercise general jurisdiction over the corporation. *Id.*

Even taking Nunes' representations as true, NBCU's contacts with Texas fall far short of establishing a "surrogate principal place of business" requisite of an "exceptional case" such as the Supreme Court found in *Perkins*.

First, Nunes claims that NBCU maintains a business presence in Texas consisting of "corporate and retail offices and agents throughout Texas, including in Austin, Dallas, Dallas-Fort Worth, El Paso, Houston, McAllen[,] and San Antonio" (Dkt. #9 at p. 3). NBCU responds that it owns and operates only one broadcast station in Texas, and that any other stations in Texas are

---

[1] It is unclear whether the parties dispute the location of NBCU's principal place of business. Nunes' Complaint alleges NBCU's principal place of business is New York (Dkt. #1 ¶ 8). NBCU states that it has headquarters in both New York and California, and has represented—in different pleadings—that each location is its principal place of business (*see* Dkt. #5 at p. 24; Dkt. #14 at p. 10). But, seeing as neither party has claimed Texas as NBCU's principal place of business, this dispute is immaterial to the outcome of the Court's general jurisdictional analysis. Thus, for the purpose of this motion, the Court takes Nunes' allegation as true and infers that NBCU's principal place of business is New York.

owned-and-operated by NBCU-affiliates (Dkt. #14 at p. 5 n.5). The parties' disagreement on this point is inconsequential. Whether NBCU's activities in Texas are its own or are of its affiliates, this Court still lacks general jurisdiction. On one hand, even if NBCU has a number of affiliate-companies operating in Texas, general jurisdiction requires that the "corporation itself—not its managing agent[s] or subsidiar[ies] or *affiliate*[*s*]—be 'at home' in the forum state." *Zoch v. Daimler, AG*, No. 6:16-CV-00057, 2017 WL 2903264, at *3 (E.D. Tex. May 16, 2017) (emphasis added); *see also Orgeron v. Opryland, U.S.A.*, No. 92-2657, 1993 WL 192200 (E.D. La. June 3, 1993) (holding that a foreign cable network with affiliates in Louisiana could not be subject to general jurisdiction based on the affiliates' in-state conduct). Thus, the activities and physical presence of NBCU-affiliates in Texas cannot create general jurisdiction over NBCU.

On the other hand, even if Nunes' representations were true, "[t]he Supreme Court has made clear that doing business within a state is no longer a sufficient basis for [general] personal jurisdiction." *Butowsky v. Gottlieb*, No. 4:19-CV-00180, 2020 WL 5757223, at *4 (E.D. Tex. Sept. 28, 2020) (citing *Daimler*, 571 U.S. at 138 n.18). Instead, a general jurisdictional analysis of a multistate corporation requires the court to assess the company's local activity not in isolation, but in the context of the company's overall activity. *BNSF Ry.*, 137 S.Ct. at 1559 (internal citation and quotation omitted); *see generally: Daimler*, 571 U.S. at 123 (no general jurisdiction where corporation's activities in the forum state generated only 2.4% of worldwide sales); *Brown*, 814 F.3d at 629 (no general jurisdiction where corporation's activities in the forum state represented less than 0.05% of nationwide workforce, and revenue from forum never exceeded 0.107% of total annual revenue); *Alcide v. Nippon Yusen Kabushiki Kaisha*, 465 F. Supp. 3d 588, 603 (E.D. La. 2020) (no general jurisdiction where corporation's activities in the forum state represented less than 1.5% of all global employees and just 6–8% of all port calls made worldwide).

Nunes did not present evidence sufficient to enable this Court to conduct a qualitative analysis of NBCU's nationwide business operations. Further, what evidence Nunes did submit compels against a finding of jurisdiction. For example, Nunes claims that NBCU's programming "reaches millions" of households "in Texas," but also states that "MSNBC reaches 96 million worldwide" (Dkt. 1 ¶ 8). This, if true, implies that Texas is but a fraction of NBCU's worldwide business. The remainder of Nunes' claims—such as NBCU's "revenues from ongoing Texas-based operations are massive" (Dkt. 9 at p. 11)—are too "vague and overgeneralized" to give any "indication as to the extent, duration, or frequency of contacts" and thus "are insufficient to support" even a *prima facie* case of general jurisdiction. *Johnston v. Multidata Sys. Intern Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

In sum, NBCU clearly has some amount of business connections in Texas, but these contacts do not transform this case into an "exceptional" one.[2] The Court is not convinced, given the standards set out in *BNSF Railway*, that one office, employees, and a general business presence in Texas are connections substantial enough to render NBCU at home here. *See, e.g., Aziz v. MMR Grp., Inc.*, No. H-17-3907, 2018 WL 3439637, at *4 (S.D. Tex. July 17, 2018) (no general jurisdiction over foreign corporation that owned and operated four permanent facilities with multiple employees in Texas); *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts., LLC*, 466 F. Supp. 3d 692, 701 (S.D. Tex. 2020) (no general jurisdiction over foreign corporation with four offices, 240 employees, and a business presence in Texas). Further, unlike the "exceptional case"

---

[2] Nunes also argued that the Court should consider NBCU's failure to challenge jurisdiction in a prior Texas case as evidence that jurisdiction exists over NBCU in the present case. The prior case involved different facts, claims, and parties. Thus, this argument has no merit. *See Chemguard Inc. v. Dynax Corp.*, No. 4:08-CV-057, 2020 WL 363481, at *9 (N.D. Tex. Feb. 2, 2010) (recognizing that "waiver of jurisdiction occurring because of the filing of a second suit applie[s] only to a complaint arising out of the same transaction as [the second suit].") (internal quotations omitted).

found in *Perkins*, Nunes presented no facts indicating that: (1) NBCU's leading executive employees work in Texas; (2) NBCU holds directors' meetings in Texas; or (3) NBCU administers its company-wide policies from a Texas office. *See Garcia Hamilton*, 466 F. Supp. 3d at 701 (citing *Perkins*, 342 U.S. at 447–48).

Accordingly, the Court finds that Nunes failed to make a *prima facie* showing of general jurisdiction over NBCU, and moves to its specific jurisdiction analysis.

### B. Specific Jurisdiction

Nunes contends that specific jurisdiction is proper because NBCU intended to serve the market in the forum state by airing its broadcasts in Texas (Dkt. #9 at pp. 17–18). NBCU responds that Texas was not the focus of the Report or the alleged harm suffered (Dkt. #5 at p. 11). Accordingly, NBCU argues, there is no relationship between it, the forum, and the litigation that would create the requisite contacts for the Court to exercise specific jurisdiction (Dkt. #14 at p. 7).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction

is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King*, 471 U.S. at 475).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. Nonetheless, "[i]t is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### 1.  Purposeful Availment

A defendant establishes minimum contacts with a state if "the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). There must be some act whereby the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475.

Moreover, to support a finding of specific jurisdiction in a media defamation case, showing "availability of a broadcast in [the] forum state is not enough." *Butowsky*, 2020 WL 5757223, at *4 (citing *TV Azteca v. Ruiz*, 490 S.W.3d 29, 45 (Tex. 2016)). "[T]he issue narrows to whether the publication of the allegedly defamatory remarks constituted purposeful availment such that the defendant could have reasonably anticipated being haled into a Texas court as a result of the

defendant's statements." *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010), *cert. denied*, 564 U.S. 1052 (2011); *see also Celanese Corp. v. Sahagun*, No. 05-16-00868, 2017 WL 3405186, at *7 (Tex. App.—Dallas Aug. 9, 2017) ("The key inquiry in a challenge to personal jurisdiction over a defamation claim is whether the defamatory statement was directed at the forum state.").

In *Calder v. Jones*, the Supreme Court set out the purposeful availment test used for an author of an allegedly defamatory statement. 465 U.S. 783 (1984). Under *Calder*, the plaintiff must demonstrate that both "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005). In other words, a plaintiff "must establish that Texas was the 'focal point' of both the challenged broadcast and the harm suffered." *Busch v. Viacom Int'l, Inc.,* 477 F. Supp. 2d 764, 772 (N.D. Tex. 2007) (citing *Calder*, 465 U.S. at 788–89). A defendant's contacts identified through *Calder*'s "effects' test" are "but one facet of the ordinary minimum contact analysis, to be considered as part of the full range of defendant's contacts with the forum." *Id.* at 772 (citations omitted).

### a.  The Subject of the Report

First, to satisfy the *Calder* "subject" prong, the allegedly defamatory communications must focus on the forum state itself and the plaintiff's activities within that state. *See Clemens*, 615 F.3d at 380. "The key to purposeful availment pursuant to *Calder* is the defendant's choice—in writing about the forum state—to aim the article at the state." *Butowsky v. Gottlieb*, 4:19-CV-00180, 2020 WL 5797713, at *11 (E.D. Tex. July 16, 2020), *report and recommendation adopted*, 2020 WL 5757223.

Nunes claims that NBCU "specifically targeted and purposely exploited the Texas market by selling its cable television programs, including *The Rachel Maddow Show*, to subscribers and consumers in Texas" (Dkt. #16 at p. 7 n.7). Nunes' argument is unconvincing. Aside from conclusory allegations, Nunes presents no evidence that the statements made in the Report or any

11

actions by NBCU related to the Report's publication directly targeted Texas residents. Nor can he. The Report makes no mention of this forum. Instead, the Report contains statements about Nunes, a California citizen living in California and working in Washington, D.C., regarding a federal report that investigated Nunes' activities in D.C. The statements about Nunes made in the Report contain no reference to any activities he or NBCU conducted in Texas. Tellingly, NBCU contends that *The Rachel Maddow Show*, including the Report segment, was never even broadcast on its sole Texas network—a fact Nunes does not refute (Dkt. #14 at p. 5 n.5). Nunes has simply presented no evidence that the Report "was [ ] directed at Texas [viewers] as distinguished from [viewers] in other states." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).

Nunes other arguments are similarly flawed. Nunes alleges that NBCU's "operation of an active website" and YouTube channel "further demonstrate[] that it purposefully avails itself of the privilege of doing business in Texas and that the exercise of personal jurisdiction is proper" (Dkt. #16 at p. 7). But, again, Nunes has presented no facts that NBCU's website specifically targeted Texas viewers. Rather, even if interactive, the website and YouTube channel—and thus the Report's publications there—were "accessible to anyone in the world with an [I]nternet connection." *Golden v. Clear Advantage Mktg.*, No. 15-7569, 2016 WL 9651215, at *6 (E.D. La. Sept. 30, 2016); *see also Miller v. Original Media Publ'g LLC*, A-12-CV-1147, 2013 WL 12109027, at *3 (W.D. Tex. Sept. 13, 2013) (personal jurisdiction may vest where defendant's website "clearly does business . . . with residents of other states," in contrast to "passive website[s] that [do] nothing more than advertise on the Internet") (citing *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999)); *Johnson v. TheHuffingtonPost*, 21 F.4th 314, 319–20 (5th Cir. Dec. 23, 2021) (affirming district court's dismissal for lack of specific personal jurisdiction where allegedly libelous story published online had no ties to Texas, did not mention Texas, recounted a meeting

12

that took place outside of Texas, and used no Texan sources). And as the Fifth Circuit recently affirmed, "[a]ccessibility alone cannot sustain our jurisdiction." *Johnson*, 21 F.4th at 320.

Next, Nunes contends that NBCU's broadcast of the Report to its "millions of subscribers and followers" on Twitter caused him harm in Texas by damaging his reputation with his "significant" Texan support base (Dkt. #16 at p. 2). Specifically, Nunes claims the Report was published to Maddow's 1,200,000 Twitter followers and MSNBC's 4,100,000 Twitter followers, which "includ[ed] hundreds of thousands in Texas" (Dkt. #1 ¶ 8). Nunes argues that MSNBC "knew or should have known that the Statements would be republished over and over by third-parties," namely "Maddow's followers, mainstream media, and users of Twitter" (Dkt #1 at p. 10). Nunes cannot prevail on this argument.

Posting an allegedly defamatory statement on Twitter does not satisfy *Calder*'s "effects test" merely because some members of the Tweet's audience fortuitously reside in the forum state. *See Xenex Disinfection Servs. LLC v. Deal*, No. SA-16-CV-232, 2016 WL 3033779, at *3 n.4 (W.D. Tex. May 25, 2016) (collecting cases). This remains true even where the publisher of the statement is aware that some viewers could be forum residents. *See Sovereign Offshore Servs., LLC v. Shames*, No. 17-CV-80172, 2017 WL 7798664, at *3 n.4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that consumers across the nation may access his blog posts is not enough to support the exercise of personal jurisdiction.").

While the Fifth Circuit Court of Appeals has yet to address the impact of a Tweet on specific personal jurisdiction, several district courts across the country have addressed the issue and come to the same conclusion as held herein. *See Miller v. Gizmodo Media Grp.*, 383 F. Supp. 3d 1365, 1374 n.4 (S.D. Fla. 2019) (noting "effects test" requires more than some members of the Tweet's audience being connected to the forum state); *Vangheluwe v. Got News, LLC*, 365 F. Supp.

13

3d 850, 863 (E.D. Mich. 2019) (finding insufficient minimum contacts where the Tweet in question "was not tailored to a Michigan audience," and there was "no evidence that [defendant] marketed or circulated the article to people in Michigan specifically as opposed to [defendant's] readers generally"); *Planet Aid, Inc. v. Reveal, Ctr. For Investigative Reporting*, No. GLR-16-2974, 2017 WL 2778825, at *7 n.8 (D. Md. June 26, 2017) ("Even assuming that the Twitter users reside in Maryland, [the defendant's] tweets are insufficient minimum contacts between [d]efendants and Maryland"). Again, Nunes presents no evidence that NBCU's publication of the Report on its Twitter accounts was "in any way directed to Texas, [or] specifically curated for a Texas audience." *Bell v. Moawad Grp., LLC*, No. A-17-CA-00073, 2017 WL 2841679, at *5 (W.D. Tex. June 30, 2017).

Therefore, the Court finds that because Texas is not the subject of the Report, Nunes has not satisfied the first prong of *Calder*.

### b.  The Sources Relied Upon for the Report

Next, to satisfy the *Calder* "sources" prong, the Court must consider whether "the sources relied upon for the article were in the forum state." *Fielding*, 415 F.3d at 426. Here, Nunes never argues that NBCU relied upon or consulted Texas sources in compiling videos and broadcasts related to the Report. Absent any evidence or even allegations by Nunes to the contrary, the Court concludes that the Report did not rely on sources from this forum. Thus, the "sources" prong of the *Calder* analysis is not satisfied. *See Johnson*, 21 F.4th at 320.

Because Nunes has satisfied neither the "subject" nor the "sources" prong of the *Calder* analysis, and has not alleged facts showing other sufficient minimum contacts between NBCU and Texas related to the Report, the Court holds that Nunes failed to make a *prima facie* showing of specific jurisdiction over NBCU.

14

### 2.   Fair and Reasonable

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Nuovo Pignone*, 310 F.3d at 380 (citing *Wien Air Alaska*, 195 F.3d at 215). The defendant must make a "compelling case," *Burger King*, 471 U.S. at 477, because "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759–60 (quoting *Wien Air Alaska*, 195 F.3d at 215). As mentioned, *supra* p. 10, a court analyzes five factors in deciding whether exercise of personal jurisdiction over a nonresident defendant is fair and reasonable. However, these "considerations usually may be accommodated through means short of finding jurisdiction unconstitutional"—for example, "a defendant claiming substantial inconvenience may seek a change of venue." *Burger King*, 471 U.S. at 477.

Because Nunes failed to meet his burden of establishing purposeful availment, the burden does not shift to NBCU to show the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Nevertheless, the Court notes that exercising personal jurisdiction over NBCU would violate these principles. Nunes asks this Court to hale NBCU into Texas because some of his Texas supporters may have viewed the nationally-broadcast Report. But those views—if they exist—"reflect only [NBCU's] universal accessibility, not its purposeful availment of Texas." *Johnson*, 21 F.4th at 320. Accordingly, forcing NBCU, a non-resident of Texas, to defend a lawsuit brought here by another non-resident would impose an unjustified and unconstitutional burden on NBCU. *See Fielding*, 415 F.3d at 427–28 (finding that "focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms" contravenes "traditional notions of fair play").

## II.   Jurisdictional Discovery

Nunes asks that the Court permit jurisdictional discovery and adjust related deadlines so

that he can "demonstrate the full nature, extent and frequency of [NBCU's] continuous business contacts over the three (3) years prior to commencement of this action" (Dkt. #8 at p. 10). NBCU argues the Court should deny Nunes' "wide-ranging" request because he "fail[ed] to make a preliminary showing of jurisdiction" (Dkt. #11 at p. 2). The Court agrees with NBCU.

A district court has broad discretion to permit or deny a party jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 283–84 (5th Cir. 1982). A court "may decline to permit discovery on matters of personal jurisdiction where no issue of material fact exists and when 'the lack of personal jurisdiction is clear.'" *Rawls v. Old Rep. Gen. Ins. Grp., Inc.*, 489 F. Supp. 3d 646, 665 (S.D. Tex. 2020) (citing *Wyatt*, 686 F.2d at 283–84). The scope of permissible discovery is limited by the relevancy of the inquiry, although relevance is construed broadly in the context of discovery. *Id.* "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-CV-629, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F. 3d 841, 855 (5th Cir. 2000)).

The Court declines to allow further discovery on the issue of personal jurisdiction. Though Nunes listed the topics he would like to investigate, the Court finds that the absence of personal jurisdiction is clear and further discovery "would serve no purpose." *Kelly*, 213 F.3d at 855. Even assuming NBCU has additional offices or employees in Texas, these facts would not render Texas a "surrogate" for NBCU's place of incorporation or headquarters. *See Monkton*, 768 F.3d at 434 (affirming district court's denial of jurisdictional discovery because even if the plaintiff discovered evidence of additional communications and contacts between defendant and Texas, "this would not be enough to show that [the defendant] is 'at home' in Texas" when its place of incorporation

16

and principal place of business were in the Cayman Islands). Moreover, none of the requested

discovery would alter the fact that the Report does not focus on Texas, nor rely on Texas sources.

*See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (affirming denial

of jurisdictional discovery because "no amount of information on such contacts with Texas would

strengthen [plaintiff's] showing of specific jurisdiction, given [plaintiff's] inability to connect such

contacts to the instant litigation"); *Johnson*, 21 F.4th at 319.

Accordingly, the Court denies Nunes' motion for leave to conduct jurisdictional discovery.

## III.   Dismissal or Transfer

Having found that it lacks personal jurisdiction over NBCU, the Court now considers

whether to dismiss or transfer the case. NBCU requests the Court: (1) dismiss the case for lack of

personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) dismiss the case for

improper venue under Federal Rule of Civil Procedure 12(b)(3) or 28 U.S.C. § 1406(a); or

(3) transfer the case under 28 U.S.C. § 1404(a) or § 1406(a).

"Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to

Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.,* 730 F.3d 460, 466 (5th Cir.

2013). Conversely, the court can transfer the action under 28 U.S.C. § 1406(a) "to 'any district or

division in which it could have been brought' if the court finds that it is 'in the interest of justice'

to transfer the action." *Id.* Section 1406(a) expressly applies where an action "lay[s] venue in the

wrong division or district." 28 U.S.C. § 1406(a). Additionally, even "in a district where venue is

otherwise proper," a court may transfer under § 1406(a) if it lacks personal jurisdiction. *Herman*,

730 F.3d at 466 (internal citations omitted). Because § 1406 authorizes a court to transfer a case

due to lack of personal jurisdiction, the Court need not perform a venue analysis on this forum.

Thus, the Court will only analyze whether transfer to another forum is appropriate under § 1406(a),

or, in the alternative, whether the Court should dismiss the case under Rule 12(b)(2). While transfer

17

is generally preferred over dismissal, a court's "decision to transfer is discretionary, and often made to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Springboards to Ed., Inc. v. Hamilton Cnty. Read 20*, No. 3:16-CV-2509, 2017 WL 3023489, at *5–6 (N.D. Tex. July 14, 2017) (internal citations omitted).

To transfer a case under § 1406(a), the Court must determine if a proper venue exists under one of the three categories set out in § 1391(b). Under 28 U.S.C. § 1391(b), a civil action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; . . . or
> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, NBCU argues that this case should be transferred to the United States District Court for the Eastern District of California because NBCU's headquarters are located there and Nunes resides there (Dkt. #5 at p. 10). Venue is proper under § 1391(b)(1) "where any defendant resides." 28 U.S.C. § 1391(b)(1). "An entity's residence for venue purposes is where personal jurisdiction could be exercised over the entity." *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 473 (E.D. Tex. 2020). Where personal jurisdiction could be exercised in a multidistrict state, venue is proper "in any district in that State within which the corporation's contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. § 1391(d).[3] California is a multi-district state comprised of the Northern District,

---

[3] Though § 1391(d) refers to "corporations" and NBCU is a limited liability company, the Court will still apply the multi-district provision found in § 1391(d). *See Graham v. Dyncorp Intern., Inc.*, 3:13-CV-00065, 2013 WL 5305788, at *2 n.2 (S.D. Tex. Sept. 19, 2013) (examining the history of § 1391(d) and concluding that the 2011 amendment to

Southern District, Eastern District, and Central District. NBCU argues that venue would be proper in the Eastern District of California because of NBCU's headquarters, or, in other words, because the Eastern District could exercise general personal jurisdiction over NBCU. However, NBCU's California headquarters are in Universal City in Los Angeles County, which appears to be located within the Central District of California.[4] Thus, the judicial district with § 1391(b)(1) venue based on general personal jurisdiction would be the Central District of California, not the Eastern District of California. Further, the Court lacks sufficient information to determine whether NBCU is subject to specific personal jurisdiction in the Eastern District of California to create proper venue under § 1391(b)(1).

The Court also doubts whether venue would be proper in the Eastern District of California under § 1391(b)(2). To determine where a substantial part of events occurred for a defamation case under § 1391(b)(2), the court may consider where the defamation occurred and where the harms were felt. *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2011 WL 2457859, at *13 (E.D. La. June 16, 2011). While Nunes resides within the Eastern District of California, a plaintiff's residence in a particular judicial district, without more, does not necessarily mean that the events or injury occurred there. *Nuttal v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) (citing *Bigham v. Envirocare of Utah*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000)). Regardless, even if some of the events or injury occurred in the Eastern District of California, the Court finds that the interests of justice favor a transfer to the Southern District of New York.[5] *See Seariver*

---

the statute that failed to carry-over unincorporated associations into the multi-district provision was a legislative oversight); *Stohl v. Magic Mountain*, No. 2:17-CV-01858, 2019 WL 498993, at *3 (E.D. Cal. Feb. 8, 2019) (applying § 1391(d) to determine proper venue in California over an LLC defendant).

[4] *See* "Jurisdiction Map for the Central District of California" (https://www.cacd.uscourts.gov/jurisdiction) (last visited January 27, 2021).

[5] While NBCU did not request a transfer to the Southern District of New York, Nunes raised the issue as one the Court should consider (Dkt. #16 at p. 10 n.12). Additionally, neither party appears to dispute that venue would be proper in the Southern District of New York, and the facts in the record support a transfer there.

*Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 458-459 (S.D. Tex. 1996) ("It is, of course, possible in a given case that there could be more than one district in which a 'substantial part of the events . . . giving rise to a claim occurred,' and therefore there could be more than one proper venue for a certain cause of action.").

Venue is proper is the Southern District of New York under § 1391(b)(1) because NBCU's New York corporate headquarters are in Manhattan, New York City within New York County.[6] NBCU would thus be subject to general personal jurisdiction in the Southern District of New York. Venue is also proper under § 1391(b)(2). Here, the parties agree that Maddow and other individuals involved in the Report's production, including the show's executive producer, work in New York City; the Report was prepared in New York City; recorded in New York City; published in New York City; broadcast in New York City; and produced by MSNBC, headquartered in New York City. Thus, the Court concludes that a substantial number of events occurred in the Southern District of New York.

Therefore, pursuant to § 1406(a), the Court transfers this case to the Southern District of New York. Because the Court finds transfer appropriate under § 1406(a) and favored over dismissal, addressing NBCU's alternative argument for transfer pursuant to § 1404(a) is unnecessary at this time. *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1078 (E.D. Tex. 1997).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 28 U.S.C. § 1406(a), or, in the Alternative, Motion to Transfer Venue to the U.S. District Court

---

[6] *See* "Southern District of New York – Area of Service" (https://www.usmarshals.gov/district/ny-s/general/area.htm) (last visited January 27, 2021).

for the Eastern District of California Under 28 U.S.C. § 1404(a) or § 1406(a) (Dkt. #5) is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff's Motion to Permit Jurisdictional Discovery and to Adjust Deadlines (Dkt. #8) is **DENIED**.

It is further **ORDERED** that this case is **TRANSFERRED** to the Southern District of New York.

**IT IS SO ORDERED.**

**SIGNED this 28th day of January, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE